NATIONAL AWARENESS
FOUNDATION et al.,
Plaintiffs,

v.

Robert ABRAMS, Attorney General of the State of New York and Gail S. Shaffer, Secretary of the State of New York, Defendants.

No. 91 Civ. 7670 (GLG).

United States District Court,
S.D. New York.

Feb. 9, 1993.

Copilevitz, Bryant, Gray & Jennings, P.C. (Errol Copilevitz, John P. Jennings, Jr., of counsel), Kansas City, MO, Hall, Dickler, Lawler, Kent & Friedman (Baba M. Zipkin, of counsel) White Plains, NY, for plaintiffs.

Robert Abrams, Atty. Gen., State of N.Y. by Pamela A. Mann, David G. Samuels, Susan A. Glover, Jane Aoyama–Martin, Asst. Attys. Gen., New York City, for defendants.

### OPINION

GOETTEL, District Judge.

This action concerns the constitutionality of a New York law imposing registration charges upon professional solicitors. Plaintiffs have brought suit under § 1983 challenging New York Executive Law § 173–b which requires professional solicitors to register with the state and pay an $80 annual fee before they are permitted to conduct fundraising activities. Plaintiffs are two organizations that educate the public on the issues of drug abuse and child abuse as well as various individuals, all New York residents, whose profession is telemarketing and who have paid the $80 registration fee.

Executive Law § 173–b(1), entitled Solicitation and Collection of Funds for Charitable Purposes, states in part that:

No person shall act as a professional solicitor in the employ of a professional fundraiser ... before he has registered with the Secretary ... registration shall be in writing ... and shall be accompanied by a fee in the sum of eighty dollars.

N.Y.Exec.Law § 173–b. A "professional solicitor" is defined as:

Any person who is employed or retained for compensation by a professional fund raiser to solicit contributions for charitable purposes or for the purposes of any law enforcement support organization from persons in this state.

N.Y.Exec.Law § 173–a.

Violation of this law is deemed a misdemeanor. Generally, the plaintiffs contend that their abilities to retain professional fundraisers, conduct their public education programs, and operate as fundraisers are unfairly impaired by this statute. Plaintiff seeks to declare the law unconstitutional under the 1st and 14th Amendments and a permanent injunction enjoining its enforcement.

Plaintiffs argue that § 173–b's $80 registration fee violates the 1st Amendment to the United States Constitution as an unconstitutional tax and prior restraint on their 1st Amendment protected expression unrelated to the expenses associated with administering the law. They also contend that § 173–b violates their equal protection rights under the 14th Amendment by requiring $80 fees from solicitors working for professional fundraisers while exempting officers, volunteers, and employees of charitable organizations or fundraising counsel from the fee.

Before the court today are plaintiffs' and defendants' motions for summary judgment. We can only grant a motion for summary judgment where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Challenges to the constitutionality of licensing statutes have been decided on summary judgment. The question is whether plaintiffs' constitutional claims involve disputed issues of fact or represent purely questions of law.

In general, it seems clear that charitable solicitations are considered protected speech under the 1st Amendment. *See Riley v. National Federation of the Blind of North Carolina*, 487 U.S. 781, 801, 108 S.Ct. 2667, 2680, 101 L.Ed.2d 669 (1988).

The parties do not contest this. What they contest is the manner in which New York regulates professional fundraisers.

In general, registration fees are constitutionally permissible if they are nominal and are imposed to defray the administrative costs involved in the registration. *Murdock v. Commonwealth of Pennsylvania,* 319 U.S. 105, 113–14, 63 S.Ct. 870, 875, 87 L.Ed. 1292 (1943); *Gannett Satellite Information Network, Inc. v. Metropolitan Transp. Authority,* 745 F.2d 767, 774 (2d Cir.1984). In *Murdock,* a license fee was declared invalid because it was "not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question." 319 U.S. at 113–14, 63 S.Ct. at 875.

■ Plaintiffs argue firstly that the $80 fee is not nominal, but rather substantial and burdensome upon professional solicitors in New York. Secondly, plaintiffs contend that the revenues derived from the $80 fees are not used simply to defray the state's administrative costs associated with § 173–b.

Courts have struck down registration fees ranging from a little as $1.50 up to $35. *See, e.g., Murdock,* 319 U.S. 105, 63 S.Ct. 870 ($1.50 licensing fee on solicitations struck down); *Moffett v. Killian,* 360 F.Supp. 228 (D.Conn.1973) ($35 fee on lobbying activities deemed unconstitutional raising of revenues). Conversely, courts have upheld the constitutionality of a fee ranging up to $300. *See Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

Despite plaintiff's urging, we do not agree that an $80 fee by definition cannot be nominal. As just shown, a quick survey of the fee cases demonstrates that no hard and fast definition of nominal exists. Nominal is necessarily a relative term, to be judged by how substantial something is when viewed in its context.

Plaintiffs stress that in recent years New York has collected more money in § 173–b revenues than the Office of Charities Registration ("OCR") has expended in costs. For example, in 1992, OCR reported expenses of $340,000 and revenues of $711,-000. Plaintiffs offer figures for the preceding five years that purport to show increasing "profits" over the past three years.

While contesting the exact figures, defendants admit that revenues for OCR have exceeded office expenses since 1990. However, they stress that plaintiff has disingenuously focused solely on the administrative costs of OCR while ignoring the costs of enforcing § 173–b that are borne by other state agencies besides OCR. Defendants argue that the Department of State and the Charities Bureau of the Attorney General's office provide support services to OCR and the latter agency also investigates and prosecutes violations of § 173–b.

Plaintiffs respond that enforcement expenses are never chargeable against the fees levied on regulated activity. They argue that fees on regulated activity must be used solely to defray administrative expenses related to the scope of the activities in question. They also dismiss the Attorney General's enforcement role as "redundant or gratuitous, or both."

Plaintiffs offer nothing to support this latter point. Because the Attorney General has enforcement powers unavailable to OCR including the ability to secure injunctive relief and recover penalties in civil actions, its functions are clearly not redundant or gratuitous. Further, there is no evidence that the division of enforcement labor between OCR and the Charities Bureau has produced any overlap or redundancy. Defendants point out that each agency is kept advised of the other's enforcement actions to avoid such duplication of effort.

At this point, it is unclear, even if we do consider the enforcement costs borne by the Charities Bureau, whether the solicitor fee revenues produce any net profits for New York. Moreover, plaintiffs do not dispute that the state may enforce its registration laws. Therefore, the question of the fee's acceptability under the 1st Amendment boils down to two narrow issues. First, can enforcement costs be con-

sidered when judging a fee's impact on a regulated activity, or are only administrative costs—meaning the costs of processing and issuing fees—to be considered? And if yes, have defendants offered evidence sufficiently showing the link between the fee and their administrative and enforcement costs?

Plaintiffs position is clear. They contend that registration fees may not reflect or help defray any enforcement costs associated with registration. They argue that the federal cases discussing permissible fees only speak of defraying administrative expenses, never mentioning enforcement costs as a consideration. They also cite New York cases that suggest that the expenses of regulating a business cannot be considered administrative costs. We must disagree on both counts.

In the most recent state case cited by plaintiffs, *Torsoe Brothers Construction Corp. v. Bd. of Trustees of Village of Monroe*, 49 A.D.2d 461, 375 N.Y.S.2d 612 (N.Y.A.D.1975), a New York court specifically held that "it is well settled that where a license or permit fee is imposed under the power to regulate, the amount charged cannot be greater than a sum reasonably necessary to cover the costs of issuance, inspection *and enforcement." Id.* at 616–17 (emphasis added). The court stated that fees should be considered unauthorized taxes when they are exacted for revenue purposes or to offset the costs of general governmental functions. *Id.* at 617. Plaintiffs are correct that New York law seems clear, only it seems clear contrary to plaintiffs' position since *Torsoe Brothers* says that regulatory fees may include enforcement costs.

As far as the federal courts are concerned, the issue is slightly less clear. However, in at least one case, a $500 annual license fee for adult-oriented establishments was held not unconstitutional because the government demonstrated that the yearly costs of processing each license application and enforcing a regulatory ordinance were comparable to the fee. *See Broadway Books, Inc. v. Roberts*, 642 F.Supp. 486, 493 (E.D.Tenn.1986). There,

the court reasoned, since enforcement was directly related to law enforcement rather than the suppression of speech, the portion of the fee attributable to enforcement was justified.

In a second case, *Mobile Sign Inc. v. Town of Brookhaven*, 670 F.Supp. 68 (E.D.N.Y.1987), the court upheld a $25 permit fee for mobile signs. Included within the costs documented by the town at trial were the costs of regular inspections to ensure compliance with its regulations. By allowing the town to factor expenses for inspections to ensure compliance into its fee structure, the court recognized in actuality the validity of using enforcement costs to set permit fees, if sufficiently proven.

Also the Second Circuit in *United States Labor Party v. Codd*, 527 F.2d 118 (2d Cir.1975), specifically recognized that administrative costs associated with the enforcement of a licensing ordinance were relevant in determining the constitutionality of permits for using sound amplification devices. *Id.* at 119–20.

We follow the course just described and conclude that if New York establishes a reasonable connection between the $80 registration fee for professional solicitors and the particular administrative and enforcement costs each year associated with its regulation of these fundraisers, the fee would not represent an unconstitutional prior restraint on plaintiffs' 1st Amendment rights. We recognize the difficulty in separating the costs of enforcing the laws governing professional solicitor from enforcement costs for actions against charities. However, even if many of the state's enforcement activities involve actions against both charities and individual solicitors, presumably some factual showing can be made to connect the $80 fee with the actual administrative and enforcement costs for the professional solicitors laws.

At oral argument, plaintiffs also noted the existence of a cost recovery mechanism available to the government in enforcement activities. Defendants conceded the possibility of collecting costs against professional solicitors who violate Article 7–A but

stated that this option, rarely utilized, was used to recover out-of-pocket disbursements. Without additional information regarding the state's ability to recover enforcement costs in its enforcement actions against professional solicitors, we cannot assess how the availability of cost recovery procedures impacts the propriety of the $80 fee.

At present, the factual record does not enable us to reach any conclusion as a matter of law. We thus deny both summary judgment motions on the 1st Amendment claim.

■ On the equal protection claim, plaintiff contends that New York's fee distinction between professional solicitors working for professional fundraisers who must register and pay the mandatory $80 fee and employees of charitable organizations soliciting contributions who do not is an unconstitutional distinction. In plaintiffs' view, the identity of the fundraiser's employer should not serve as a basis for a registration fee.

Defendants respond that employees of charitable organizations raising contributions in-house are not similarly situated to professional solicitors justifying identical treatment under the Equal Protection Clause. The thrust of defendants' argument is that charitable organizations themselves are already required by New York law to register with the state and they maintain the duty to directly supervise their own in-house solicitors. Unlike these in-house personnel, defendants stress that no charity has any responsibility to oversee or monitor the activities of professional solicitors and fundraisers. That job is only performed through Article 7–A of New York's Executive Law. Plaintiffs correctly note that when expressive conduct protected by the 1st Amendment is regulated, the regulation must serve a substantial government interest. *See Police Department of Chicago v. Mosley*, 408 U.S. 92, 99, 92 S.Ct. 2286, 2292, 33 L.Ed.2d 212 (1972). New York's interest in protecting the general public by regulating fundraisers otherwise unaccountable seems beyond dispute.

We disagree with plaintiffs that New York's law discriminates on the basis on speech content. Any and all professional solicitors not working in-house for a charitable organization are charged the $80 fee, whatever their viewpoint. Similarly, every charitable organization must register with the state and comply with even more comprehensive state regulations including the payment of registration and filing fees (which can reach upwards to $1500 a year on New York's sliding scale for larger charities). *See* N.Y.Exec.Law § 172 and EPTL § 8–1.4. Content of speech play no role in any of this. And indeed, the state ultimately charges fees to all charitable entities.

Plaintiffs have also offered no evidence supporting the notion that smaller charities are unable to conduct their own fundraising or comply with Article 7–A's requirements. They do argue that in the event a telephone solicitor is unable to afford the $80 registration fee, his or her voice in the arena of public support is effectively silenced. We disagree. Even assuming a professional solicitor could not afford the fee, nothing stops a charity from making its solicitations without employing professional fundraisers, so long as they pay their phone bills.

While plaintiffs raise the specter of professional fundraisers unable to afford the $80 fee, they admit that the present record offers absolutely no evidence that plaintiffs are financially unable to pay the fee. Def. Brief at 20. Since a case of a professional solicitor unable to afford the fee is not before this court, we offer no opinion on that matter.

In short, New York's regulation of all charitable fundraisers and organizations appears quite comprehensive and prudent, devised to protect the public from unsupervised fundraising activities. Its system appears tailored to serve the particular government interests in regulating both charitable organizations and independent professional fundraisers. For all the foregoing reasons, plaintiffs' summary judgment motion is denied in all respects and defendants' motion for summary judgment is

granted with respect to plaintiff's equal protection claim and denied with respect to plaintiff's 1st Amendment claim. Since discovery is completed, the case will be set down on the trial calendar.

SO ORDERED.