## NATIONAL AWARENESS FOUNDATION et al., Plaintiffs,

v.

**Robert ABRAMS, Attorney General of the State of New York and Gail S. Shaffer, Secretary of the State of New York, Defendants.**

No. 91 Civ. 7670(GLG).

United States District Court, S.D. New York.

April 18, 1994.

Copilevitz, Bryant, Gray & Jennings, P.C. Kansas City, MO (John P. Jennings, Jr., of counsel), Hall, Dickler, Lawler, Kent & Friedman, White Plains, NY (Baba M. Zipkin, of counsel), for plaintiffs.

G. Oliver Koppell, Atty. Gen., New York City (David G. Samuels, of counsel), for defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

This action concerns the constitutionality of New York Executive law § 173–b(1), which imposes an eighty dollar annual registration fee on professional solicitors. Plaintiffs are two organizations that educate the public concerning drug abuse and child abuse, as well as New York residents whose profession is telemarketing and who have paid the eighty dollar registration fee.

Plaintiffs' complaint seeks a determination that § 173–b(1) is unconstitutional under the First and Fourteenth Amendments, as well as a permanent injunction enjoining its enforcement. In an opinion dated February 9, 1993, dealing with both parties' motions for summary judgment, we granted defendants' motion with respect to plaintiffs' equal protection claim, but otherwise denied the motions. *See National Awareness Foundation v. Abrams,* 812 F.Supp. 431 (S.D.N.Y.1993).

In that opinion, we noted that registration fees for professional fundraisers are permissible under the First Amendment if they are nominal and are imposed to defray the administrative costs involved in the registration. *Id.* at 433. We also held that the costs of enforcing § 173–b(1) can be considered part of the administrative costs for purposes of this constitutional analysis. *Id.* at 434. We noted that § 173–b(1) is enforced both by the Office of Charities Registration (the

"OCR"), and by the Attorney General's Charities Bureau, which has enforcement powers beyond those of the OCR. We concluded that defendants will have established the permissibility of § 173–b(1) under the First Amendment if they can show that there is a reasonable connection between the eighty dollar fee and the costs of administering the statute (which includes the aforementioned enforcement costs). *Id.*

Plaintiffs then moved for certification of an interlocutory appeal on the dismissal of their equal protection claim and the holding that enforcement costs may be considered when assessing the nominality of a registration fee. We granted the motion in a memorandum decision dated March 22, 1993, but the Second Circuit denied leave to file an interlocutory appeal in a mandate dated July 13, 1993.

Subsequently, the parties agreed to a Joint Stipulation of Facts, and now both parties are moving for judgment on a stipulated record pursuant to Fed.R.Civ.P. 57. According to the stipulated record, the total annual filing fees received by OCR from professional solicitors who register pursuant to § 173–b(1) varied from $99,120 to $140,880 between 1989 and 1993. The annual cost of OCR's administrative activities with respect to registered and delinquent professional solicitors is in excess of $20,000, and the Charities Bureau estimates that it devotes at least $150,000 annually to "actions, investigations, litigation, and compliance efforts" pursuant to § 173–b(1). The last paragraph of the stipulated record sums up these findings, stating that

> [t]he costs incurred by the State of New York in the administration and enforcement of Executive Law § 173–b(1) exceed the fees received by the State of New York through the registration of professional solicitors with OCR, pursuant to Executive Law § 173–b(1) of Article 7–A, if both the administrative costs incurred by OCR and the enforcement costs incurred by the Attorney General's office are considered.

The Stipulated Record also indicates that OCR and the Charities Bureau coordinate their efforts in relation to § 173–b(1):

> ¶ 39. The enforcement efforts of the Attorney General's office have not over-

lapped or duplicated any administrative proceeding commenced by OCR; on the contrary, the two agencies keep each other advised of the court actions filed by the Attorney General's office and of the administrative proceedings commenced by OCR in order to avoid overlap or duplication. Unregistered or delinquent organizations or individuals are referred to the Charities Bureau by OCR when OCR's efforts to secure statutory compliance have proved unsuccessful and litigation appears to be appropriate.

In light of our earlier holding that the Charities Bureau's enforcement costs could be considered in determining the nominality of the registration fee, it would appear that the Stipulated Record establishes that the registration fees imposed by § 173–b(1) do not violate the First Amendment rights of professional fundraisers.

Plaintiffs make two arguments against this conclusion. First, they attempt to re-argue the issue of whether enforcement costs may be considered in determining the constitutionality of the registration fee. Plaintiffs argue that while what they call "administrative enforcement" may be considered in this constitutional analysis, so-called "penal enforcement" may not be considered. Having lost the conceptual battle, plaintiffs are attempting a semantic counter-attack. We are unconvinced. In our earlier opinion, we specifically noted that the Charities Bureau had "enforcement powers unavailable to the OCR including the ability to secure injunctive relief and recover penalties in civil actions." In other words, we were aware of the fact that the Charities Bureau has what plaintiffs call "penal enforcement" powers when we decided that enforcement costs could be considered in determining the constitutionality of the registration fee. Plaintiffs' argument is a mere rehash of their earlier arguments, and thus we decline to revisit this issue.

Plaintiffs' second argument is that it is unreasonable under the First Amendment to in effect charge law-abiding fundraisers with the costs of enforcing § 173–b(1) against those fundraisers who violate it, when the legislature has given both the OCR and the Charities Bureau the power to recover the

costs of enforcement from wrongdoers. Plaintiffs base this argument in part on the Stipulated Record, which states that "[e]xcept for the occasional recoupment of out-of-pocket disbursements, the State of New York has not collected penalties or litigation costs in these actions and proceedings" against violators of § 173–b(1). During oral arguments, defendants indicated that the Charities Bureau's first priority has been to recover restitution from charities that violate § 173–b(1) and distribute the money to similar, but law-abiding, charities. Defendants also stated that there are rarely sufficient funds left after a charity has been prosecuted from which to recoup costs and fees.

Plaintiffs have not cited any cases in support of their argument. We do not believe that in order for a registration fee to pass muster under the First Amendment, the costs of administration and enforcement must be billed to fundraisers in proportion to the costs they cause the government to incur. We hold that a flat annual registration fee for all professional fundraisers is permissible under the First Amendment when, as here, it is nominal, and is reasonably connected to the administrative costs, including enforcement costs, of the registration system.

Defendants' motion for judgment on a stipulated record is granted, and plaintiffs' motion is denied. The clerk is directed to enter judgment for defendants.

SO ORDERED.