*1537
 
 OPINION
 

 Per Curiam:
 

 Appellant Gerald Erwin owns and operates a telephone sports information service to which customers subscribe and then call in for information at their convenience. In 1993, the legislature amended Chapter 599B, Nevada Revised Statutes, entitled “Solicitation by Telephone,” to require telephone solicitors to register their business with the State, pay an annual fee of $6,000, and post a $50,000 bond. The Attorney General informed Erwin that the statute applied to his business practices. Erwin sought equitable relief and filed a complaint, claiming that Chapter 599B did not apply to his business and that its application violated his constitutional rights. The State filed a countermotion to dismiss. After a hearing, the district court dismissed Erwin’s complaint and granted the State’s countermotion.
 

 On appeal, Erwin argues that Chapter 599B does not apply to him and that its application to his business activities violates his constitutional rights of free speech, equal protection, and due process.
 

 The Application of Chapter 599B to Erwin’s Business
 

 Erwin argues that the district court erred in finding that he was a “seller” under Chapter 599B. Before the district court, Erwin argued that he is not a seller because he is not engaged in any business activities defined by the statute. At the district court and on appeal, he argues that his business activities do not cause the harm which the legislature intended to protect against by enacting Chapter 599B. For these reasons, Erwin maintains that his business is not subject to regulation by Chapter 599B. We disagree. The plain language of the statute covers Erwin’s business.
 

 Chapter 599B regulates telephone solicitation in Nevada in order to protect consumers from fraud.
 
 See
 
 NRS 599B.005. It requires a person who is a “seller” to register, pay a $6,000 annual fee, and post a bond. “Seller” is defined by NRS 599B.010(8)(c)(2), which states:
 

 8. “[Sjeller” means any person who, on his own behalf, causes or attempts to cause a solicitation by telephone to be made through the use of one or more salesmen or any
 
 *1538
 
 automated dialing announcing device under any of the following circumstances:
 

 (c) The solicitation by telephone is made by the person in response to inquiries generated by advertisements that represent or imply that the person is offering to sell any:
 

 (2) Information or opinions relating to sporting events.
 

 Pursuant to NRS 599B.010(8)(c)(2), a “seller” includes someone who responds to inquiries generated by an advertisement and offers to sell information relating to sporting events. By advertising in sports newspapers, Erwin initiates contact with prospective purchasers of his service. Prospective customers telephone Erwin in response to his advertisements. Once a person subscribes to the service, Erwin provides sports information over the telephone.
 
 [1]
 

 Erwin’s business activities clearly qualify him as a “seller” within the definition of NRS 599B.010(8)(c)(2). While Erwin maintains that the majority of his clients are referrals from other clients, he admits that at least some of his clientele consists of persons who read his advertisements, call the 800 number listed in the advertisement, speak with his employees, and decide to purchase his service. Erwin also admits that his business is selling information regarding sporting events. Therefore, the plain language of NRS 599B.010(8)(c)(2) covers his business.
 

 Erwin argues that his business activities do not cause the harm and loss which the legislature intended to curtail by enacting Chapter 599B and that the legislative history does not substantiate the notion that the legislature intended to include his business in the regulation. Based upon our considered review of the legislative history, we disagree. In any event, we note that this court does not need to look to the legislative history to discover the meaning of Chapter 599B because the plain language of the statute covers Erwin’s conduct. “ ‘Where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not
 
 *1539
 
 permitted to search for its meaning beyond the statute itself.’” Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 503, 797 P.2d 946, 949 (1990) (quoting State v. Jepsen, 46 Nev. 193, 196, 209 P. 501, 502 (1922)). The language of Chapter 599B clearly and unambiguously contemplates the type of business activities in which Erwin is engaged. We hold that Erwin is a “seller” under Chapter 599B.
 

 Freedom of Speech
 

 Erwin maintains that Chapter 599B, as applied to his business activities, violates his constitutional right to freedom of speech. The heart of Erwin’s First Amendment challenge is that Chapter 599B imposes a financial burden upon him before he can engage in constitutionally-protected speech by requiring him to pay to the State a $6,000 annual registration fee and a $50,000 security bond. Thus, he apparently argues that the statute is an unconstitutional prior restraint on his right to disseminate information.
 

 The First Amendment to the United States Constitution has been held applicable to the states through the due process clause of the Fourteenth Amendment.
 
 [2]
 
 Gitlow v. New York, 268 U.S. 652, 666 (1925). The First Amendment protects both the right to communicate and the right to receive information. Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748 (1976).
 

 As a practical matter, the regulation of commercial activity can prevent persons in the trades or professions from speaking in connection with their business until fees and other financial requirements are satisfied. States may impose a registration fee and other financial requirements on designated business practices even though a financial burden is placed on the exercise of the First Amendment right to engage in either commercial or noncommercial speech. National Awareness Foundation v. Abrams, 812 F. Supp. 431, 434 (S.D.N.Y. 1993),
 
 aff’d,
 
 50 F.3d 1159 (2d. Cir. 1995) (registration fee for professional fundraiser is constitutional if determined to be reasonable); Gold Coast Publications, Inc. v. Corrigan, 798 F. Supp. 1558, 1572 (S.D. Fla. 1992),
 
 aff’d in part, rev’d in part on other grounds,
 
 42 F.3d 1336 (11th Cir. 1994),
 
 and cert. denied,
 
 . U.S., 116 S. Ct. 337 (1995) (upholding licensing fee and liability insurance for newsracks); Adult Entertainment Center v. Pierce County, 788
 
 *1540
 
 P.2d 1102, 1107 (Wash. Ct. App.),
 
 review denied,
 
 796 P.2d 725 (Wash. 1990) (upholding licensing fee on adult entertainment centers).
 

 However, licensing fees imposed upon expression-related businesses “must be nominal and imposed only as a regulatory measure to defray the expenses of policing such activities.” Ellwest Stereo Theater, Inc. v. Boner, 718 F. Supp. 1553, 1574 (M.D. Tenn. 1989);
 
 see
 
 City of Minot v. Central Avenue News, Inc., 308 N.W.2d 851, 859 (N.D.),
 
 appeal dismissed,
 
 454 U.S. 1117 (1981). A fee is consistent with the First Amendment so long as the State charges no more than necessary to cover the administrative and enforcement costs of the statute. Cox v. New Hampshire, 312 U.S. 569, 577 (1941); TK’s Video, Inc. v. Denton County, Texas, 24 F.3d 705, 710 (5th Cir. 1994);
 
 Abrams,
 
 812 F. Supp. at 434. Thus, the State has the burden here of proving whether the $6,000 registration fee and $50,000 bond requirement are nominal and reasonable.
 
 See City of Minot,
 
 308 N.W.2d at 860.
 

 Both parties failed to focus on the crucial issue of whether the fee and bond requirement are nominal and reasonable at the district court level and on appeal. The record is simply bereft of this information and inadequate for this court to determine whether the State has met its burden. Therefore, we must reverse the district court’s order granting the State’s motion to dismiss, and we must remand this case to the district court to hold an evidentiary hearing to determine whether the $6,000 registration fee is nominal and reasonably necessary to defray the reasonable expenses incurred in enforcing Chapter 599B and whether the $50,000 bond amount is nominal and reasonably necessary to provide a security to recoup potential losses sustained by consumers due to a seller’s deceptive acts or cessation of business. In determining whether the fee and bond requirement are nominal, “no hard and fast definition of nominal exists. Nominal is necessarily a relative term, to be judged by how substantial something is when viewed in its context.”
 
 Abrams,
 
 812 F. Supp. at 433.
 

 As for the general regulatory nature of Chapter 599B and its effect on Erwin’s freedom to disseminate sports information, we hold that Chapter 599B is constitutional under the First Amendment. Erwin sells sports information for profit. However, First Amendment protections are not diluted merely because information is sold for profit, although the
 
 selling
 
 of such information itself is not exempt from reasonable regulation.
 
 See
 
 Talk of the Town v. City of Las Vegas, 92 Nev. 466, 470, 553 P.2d 959, 961
 
 *1541
 
 (1976). Chapter 599B does not ban or restrict Erwin’s constitutionally-protected right to disseminate truthful sports information for profit other than to regulate the actual
 
 selling
 
 of that information. A state may legitimately regulate commercial activity, including the licensing or registration of businesses.
 
 See
 
 Williamson v. Lee Optical Co., 348 U.S. 483, 486-88 (1954). A state retains this right to regulate trade, even where the practice of that trade may involve speech. Ohralik v. Ohio State Bar Assn., 436 U.S. 447, 456 (1978). “[T]he State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity.”
 
 Id.
 
 Furthermore, when speech is “linked inextricably” with a commercial transaction, the State has a concurrent interest in regulating both the commercial transaction and the speech itself. Edenfield v. Fane, 507 U.S. 761, 113 S. Ct. 1792, 1798 (1993). The solicitation of sports information sales is inextricably linked with a commercial transaction. Thus, the State has an interest in regulating the telephonic sale of sports information and any solicitation connected with that sale.
 

 Chapter 599B only directly regulates the commercial aspects of Erwin’s speech, i.e., Erwin’s solicitation of potential subscribers. It regulates that part of his speech which proposes a commercial transaction pursuant to NRS 599B.010(8)(c)(2); thus, Chapter 599B regulates Erwin’s commercial speech.
 
 See
 
 Central Hudson Gas & Electric v. Public Service Commission, 447 U.S. 557 (1980). In
 
 Central Hudson,
 
 the U.S. Supreme Court held that commercial speech which concerns unlawful activity or is misleading is not protected by the First Amendment, and that a state may freely regulate it.
 
 Id.
 
 at 563-64. A state may restrict “commercial speech that falls into neither of these categories” if it satisfies the following three-prong test:
 

 [F]irst, the government must assert a substantial interest in support of its regulation; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the regulation must be “ ‘narrowly drawn.’ ”
 

 Florida Bar v. Went For It, Inc.,... U.S. ..., 115 S. Ct. 2371, ..... (1995) (quoting
 
 Central Hudson,
 
 447 U.S. at 564-65). In Association of National Advertisers, Inc. v. Lungren, 44 F.3d 726, 732 (9th Cir. 1994), the Ninth Circuit clarified that the fit between the government interest and the means of regulation only needs to be reasonable. Moreover, the United States Supreme Court has said that laws restricting commercial speech need only
 
 *1542
 
 be tailored in a reasonable manner to serve a substantial state interest.
 
 Edenfield,
 
 506 U.S. at 767, 113 S. Ct. at 1798.
 

 We hold that Chapter 599B is a reasonable regulation of the sale of sports information comporting with constitutional requirements. Chapter 599B regulates trade and attempts to protect consumers against fraudulent practices by regulating persons who sell products and services via telephone. The legislature’s intent to protect the public from the harmful sale of certain products and services via telephone articulates a substantial state interest. More importantly, the legislative history of Chapter 599B reflects that the legislature particularly considered the real harms presented by the telephonic sale of sports information.
 

 Regulation of the telephonic sale of sports information is especially critical given the State’s interest in protecting the gaming industry from deceptive trade practices and fraud. A sports information service may intentionally or negligently provide inaccurate information about a sporting event that a subscriber could detrimentally rely on in betting. Additionally, a service may be involved in illegal betting, a legislative concern pointed out in the history of the chapter.
 

 Assuming that the fee and bond requirement are not constitutionally unreasonable under the First Amendment, we conclude that the regulations of Chapter 599B do not violate the free speech rights of telephonic sports information providers as the regulations materially advance and are narrowly drawn to achieve the State’s objective in protecting consumers of telephone sports information.
 

 If left unregulated, sports information services like Erwin’s could cause consumers to lose money because of misrepresentations made during the sale presentation or delivery of the sports information. Erwin’s particular practice of requiring consumers to pay in advance for sports information for an entire season presents significant concerns for consumer protection. Like other future contracts, the consumer could incur a financial loss if Erwin goes out of business or fails to deliver the promised services. Accordingly, the posting of a security bond by Erwin protects consumers from this potential harm.
 

 The rules of practice enumerated in the chapter also advance the public interest in consumer protection. Under NRS 599B.090, the seller must provide the Consumer Affairs Division with background information about the business and the people operating it. This information is helpful should the State need to investigate into the business practices of a sports information seller.
 

 Under NRS 599B.170, the seller must make certain disclosures to the consumer, including the salesperson’s true name, the name
 
 *1543
 
 of the seller, and all conditions and charges connected with the sale of the services or goods. Sellers must adhere to a minimum refund policy contained in NRS 599B.190 and send each subscriber a form after each phone call involving a delivery of service. All of these provisions materially advance the goal of protecting the consumers of telephone sports information in a minimally intrusive manner.
 

 Erwin appears to argue that he should not be regulated since he does not engage in deceptive trade practices. If that contention were the touchstone of our analysis it would decimate the law of trade regulation and consumer protection. By design, this area of law is prophylactic in nature so that the State can protect the marketplace and consumers from abuses. In sum, the inclusion of sports information services such as Erwin’s in Chapter 599B materially advances, is rationally related to, and is narrowly drawn to achieve the substantial public interest in regulating trade practices and protecting consumers.
 

 Equal Protection
 

 Erwin further contends that the fee and bond requirement and other regulations of Chapter 599B, as applied to his business practices, violate his right of equal protection because they arbitrarily and unconstitutionally discriminate against people who provide sports information. Assuming the fee and bond requirement are not themselves constitutionally unreasonable, we disagree.
 

 “The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives.” Police Dept, of City of Chicago v. Mosley, 408 U.S. 92, 101 (1972). As discussed already, assuming the fee and bond requirement are not constitutionally unreasonable, the regulations of the telephonic sale of sports information under Chapter 599B are narrowly tailored to the State’s legitimate and substantial interest in protecting consumers against fraud and loss in the telephonic sale of sports information.
 

 Due Process
 

 Finally, Erwin contends that Chapter 599B is vague and violates his right to due process because it fails to provide adequate notice that it applies to him. We disagree. To avoid a vagueness challenge, a statute must provide to a person of ordinary intelligence adequate notice of what conduct is prohibited and sufficient guidelines to preclude arbitrary and discriminatory enforcement
 
 *1544
 
 of the statute. Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 498-99 (1982); Cunningham v. State, 109 Nev. 569, 570, 855 P.2d 125, 125 (1993). We hold that Chapter 599B, as amended in 1993, provides adequate notice of the prohibited conduct. The statute clearly and specifically defines who is a “seller” subject to regulation by the State, outlines what conduct the statute regulates, and explains how each seller must register in order to comply with the regulation. Chapter 599B places a person of ordinary intelligence on notice that one must register with the State before engaging in these business practices. Erwin advertises his service on a regular basis in two publications and he solicits persons who call his business in response to his advertisement. Chapter 599B puts Erwin on notice that he is subject to its regulation and, therefore, does not violate his due process rights.
 

 Although Chapter 599B satisfies due process, equal protection, and the commercial speech guarantees of the First Amendment, as stated above, because the record on appeal is inadequate to determine whether the fee and bond requirement of Chapter 599B are nominal and reasonable, we reverse the district court’s order and remand for further proceedings consistent with this opinion.
 
 [3]
 

 [1]
 

 The State argues that Erwin is also a “seller” per NRS 599B.010(8)(a)(4), which defines as a “seller” one who “initiates contact by telephone with a prospective purchaser and represents or implies: . . . [t]hat offered for sale is information or opinions relating to sporting events.” Erwin denies that he ever initiates contact by telephone, and the State has not presented any evidence that would contradict Erwin’s contention. Regardless of whether Erwin falls under both subsections, he clearly falls under 599.010(8)(c)(2), as we hold here. This is sufficient to include him in the regulatory scheme of Chapter 599B.
 

 [2]
 

 The First Amendment to the United States Constitution provides in relevant part: “Congress shall make no law . . . abridging the freedom of speech . . . .”
 

 [3]
 

 The Honorable Robert E. Rose, Justice, voluntarily recused himself from participation in the decision of this appeal.