# United States Court of Appeals
## For the First Circuit

No. 04-1697

EL DÍA, INC.,

Plaintiff, Appellee,

v.

PUERTO RICO DEPARTMENT OF CONSUMER AFFAIRS;
SECRETARY OF THE DEPARTMENT OF CONSUMER AFFAIRS,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lynch, Circuit Judge.

Doraliz E. Ortiz-De León, with whom Roberto J. Sánchez-Ramos, Solicitor General, Kenneth Pamias-Velázquez, Deputy Solicitor General, and Camelia Fernández-Romeu, Assistant Solicitor General, were on brief, for appellants.
Etienne Totti-del Valle, with whom Cristina A. Fernández-Rodríguez and Totti & Rodríguez Díaz, were on brief, for appellee.

June 3, 2005

**TORRUELLA, Circuit Judge.** This case is before us on appeal from a grant of summary judgment in favor of plaintiff-appellee El Día, Inc. ("El Día"), against defendants-appellants, Puerto Rico Department of Consumer Affairs and the Secretary of Consumer Affairs in his official capacity (collectively, "DACO"). The judgment declares that Article 24 of DACO's Regulation 4339[1] is unconstitutional insofar as it impermissibly restricts commercial speech entitled to First Amendment protection. El Día, Inc. v. P.R. Dep't of Consumer Affairs, 313 F. Supp. 2d 54 (D.P.R. 2004).

## I. Background

### A. Facts

El Día is a Puerto Rico corporation that publishes "El Nuevo Día," a newspaper of general circulation in Puerto Rico. DACO is an administrative agency of the Commonwealth of Puerto Rico whose stated mission is "to defend and implement the rights of the consumer, to restrain the inflationary trends; as well as [to] establish[] and inspect[] . . . price control[s] over . . . goods and services . . . ." 3 P.R. Laws Ann. § 341b (2002).

On October 3, 1990, DACO adopted Regulation 4339 ("the Regulation"), entitled "Regulations Governing Misleading Practices and Advertising," for the stated purpose of protecting consumers from fraudulent or deceptive advertisement of goods and services

---

[1]  A certified English translation of Article 24 appears at Appendix A.

-2-

offered in commerce in Puerto Rico, and to proscribe certain misleading practices connected therewith. See DACO Reg. 4339 art. 2. The Regulation applies "to all persons dedicated to offering goods and services to consumers, on their own or through a representative, agent, intermediary or as a representative agent" in Puerto Rico, including "all persons engaged in the business of advertising or in similar activity." Id. art. 3 (certified translation). Various specific advertising and merchandising practices are proscribed as deceptive or misleading to the consumer, id. art. 7, and thus the Regulation attempts to establish a comprehensive set of rules as to the manner and content of commercial advertisements, id. arts. 8-22.

As part of this regulatory scheme, Article 24 requires that:

> Any non-resident advertiser in Puerto Rico, who is interested in broadcasting[2] one or more advertisements in Puerto Rico, must previously deposit with [DACO] a twenty-five thousand ($25,000.00) dollar bond to cover the imposition of fines for any noncompliance with

---

[2] Although the term "broadcasting" is used in the certified English translation of the Spanish-language Regulation, the proper translation for the term used in the original, "difundir," is more akin to "divulge," "propagate," or "publish." See Diccionario Manual Vox, Lengua Española, Sinónimos y Antónimos, Nueva Edición 236 (1995); María Moliner, Diccionario del Uso Español 997 (1991). Article 4 of the Regulation provides that in the event of a discrepancy between the original text in Spanish and its English translation, the Spanish text shall prevail. Nevertheless, the parties apparently agree that publication of an advertisement in a newspaper is within the purported coverage of the Regulation. Thus, the mistranslation is irrelevant for our purposes.

-3-

> the provisions, orders and resolutions of these regulations, as well as any pertinent legal remedy in favor of the consumers.
>
> . . .
>
> The posting of the required bond entails voluntarily surrendering to the jurisdiction of [DACO] and of the General Court of Justice of the Commonwealth of Puerto Rico.

This provision is intended to provide DACO with an enforcement mechanism for fines imposed against nonresident advertisers who violate the substantive requirements of the Regulation. See Defendant's Statement of Uncontested Material Facts para. 19, El Día, Inc. (No. 00-2631).

Article 24 goes on to require "[a]ny resident intermediary in Puerto Rico [to] make sure, before broadcasting an advertisement in Puerto Rico, that the advertiser has posted the required bond," DACO Reg. art. 24(B), and allows resident intermediaries, like El Día, to "comply with [their] responsibility under this regulation by assuming the advertiser's responsibility with respect to the posting of the required bond," id. art. 24(C). One $25,000 bond suffices to cover all of the advertisements that an intermediary publishes for an unlimited number of nonresident advertisers. Id.

Violation of the Regulation can result in the imposition of civil penalties up to $10,000, and may lead to the filing of a

criminal action by DACO.[3]   Id. arts. 26, 27.   Although the
Regulation appears to have been enforced with sporadic vigor, there
are several instances in which DACO imposed, or sought to impose,
civil fines upon El Día for alleged infractions of Article 24.
DACO sent notices of infraction to El Día for failure to determine
whether a nonresident advertiser had secured the required bond:  in
May 1995, imposing a $5000 fine; on August 26, 1996, imposing a
$600 fine; and on October 6, 2000, imposing a $750 fine.  See
Defendant's Statement of Uncontested Material Facts paras. 23-25.
El Día was also fined $500 for failing to respond to DACO's inquiry
about whether a bond had been secured by the nonresident purchaser
of an advertisement El Día published on September 17, 2001.  See
id. para. 26.

### B.  Proceedings

Following the October 6, 2000 Notice of Infraction, El
Día filed an action in the United States District Court for the
District of Puerto Rico challenging Article 24's bond requirement
for nonresident advertisers and its requirement that resident
intermediaries act as guarantors of the bonds.[4]  El Día sought

---

[3]  Under Puerto Rico criminal law, this would be a misdemeanor
charge with a maximum sanction of six months' imprisonment and a
$5000 fine.  See 33 P.R. Laws Ann. §§ 3044-3045 (2002).

[4]  El Día raised both its own interests, and those of its
advertisers, before the district court.  DACO's challenge to El
Día's standing was rejected by the district court, see El Día, 33
F. Supp. 2d at 59-60, and has not been appealed.

-5-

declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, arguing that Article 24 violated the First and Fourteenth Amendments, the Privileges and Immunities Clause, and the Commerce Clause of the Constitution of the United States. After various procedural skirmishes between the parties and extensive discovery, cross motions for summary judgment were filed. The district court referred these to a magistrate judge, and ultimately adopted the magistrate judge's Report and Recommendation in its Opinion and Order granting summary judgment in favor of El Día.

The district court concluded, and we agree, that no material issues of fact were in dispute, and that only legal questions remained to be resolved. Thus, a classic case for disposition by summary judgment was presented. See Fed. R. Civ. P. 56. In adopting the substance of the magistrate judge's reasoning, the district court concluded that the Regulation violates the First Amendment because it fails the test for commercial speech restrictions established in Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557 (1980).[5] In that case, the Supreme Court stated that when commercial speech is entitled to

---

[5] Although several members of the Court have since questioned the Central Hudson framework, see Thompson v. W. States Med. Center, 535 U.S. 357, 367-68 (2002), the Court has continued to apply the framework.

First Amendment protection -- that is, when it concerns lawful activity and is not misleading -- it can only be limited if the restriction (1) is in support of a substantial government interest, (2) "directly advances the governmental interest asserted," and (3) "is not more extensive than is necessary to serve that interest." Id. at 566.

Echoing the conclusions of the magistrate judge, the district court found that, although the first Central Hudson prong was met, Article 24's bond requirement failed to meet the second prong. The district court found that DACO had failed to provide evidence that the harms it sought to avoid with Article 24 are real. Moreover, Article 24 "provided ineffective and remote support to the [asserted governmental] interest of protecting consumers." El Día, 313 F. Supp. 2d at 61. Because it found that the second Central Hudson prong was not met, the district court determined that it was unnecessary to decide whether Article 24 complied with the third prong. Id. We focus our attention, as the parties did on appeal, on the second and third prongs.

## II. Discussion

This is a case of first impression, as we are unaware of any other federal or state regulation in the United States that restricts the exercise of First Amendment rights in the manner

utilized by Article 24 of the Regulation.[6]  Nonetheless, the unique nature of a restriction on expression will not cause it to run afoul of the First Amendment.  In the instant case, the Regulation fails because it does not meet the requirements set out in <u>Central Hudson</u> for valid restrictions on commercial speech.

### A. Litigation-related bonds

We note at the outset that the instant case challenges the bond requirement on First Amendment grounds.  Accordingly, DACO's reliance on <u>Hawes</u> v. <u>Club Ecuestre El Comandante</u>, 535 F.2d 140 (1st Cir. 1976), is misplaced.  In <u>Hawes</u>, we upheld the United States District Court for the District of Puerto Rico's local rule

---

[6]  DACO notes that the Supreme Court of Nevada upheld, under <u>Central Hudson</u>, a regulation that required telephone solicitors to pay an annual registration fee and post a bond as security for the recoupment of potential losses sustained by consumers as a result of solicitors' deceptive practices or cessation of business, provided the amounts of the fee and bond were "nominal and reasonable."  <u>See</u> <u>Erwin</u> v. <u>Nevada</u>, 908 P.2d 1367, 1370-72 (Nev. 1995).  Article 24, however, does not impose a registration fee like the one in <u>Erwin</u>, which was meant to cover the administrative costs of a licensing scheme.  <u>See</u> <u>id.</u> at 1370 ("[L]icensing fees imposed upon expression-related businesses must be . . . imposed only as a regulatory measure to defray the expenses of policing such activities.") (internal quotation marks omitted).  Rather, like the Nevada regulation's bond requirement, Article 24 requires security for a potential future cost that may never -- if the advertiser refrains from fraudulent or deceptive practices -- be incurred.  Unlike the Nevada requirement, however, Article 24 does not apply equally to all engaged in advertising in Puerto Rico, but only to those who do so from outside the jurisdiction, along with their intermediaries.  Moreover, Nevada's law did not require a third party -- the phone company, for example -- to act, under penalty, as guarantor of telephone solicitors' compliance with the law and continued operation.  Because of these distinctions, the Nevada court's decision in <u>Erwin</u> will not guide our analysis in the instant case.

requiring nonresident plaintiffs to post a bond as security against the assessment of costs, expenses, and attorney's fees against equal protection and Privileges and Immunities Clause challenges. Id. at 143. The bond requirement in Hawes was not a restriction of the right of expression, and was not challenged on First Amendment grounds. It was therefore not evaluated under the standards required for commercial speech restrictions after Central Hudson. Instead, because the right of access to the courts was not deemed a fundamental right that could be abridged only in support of a compelling government interest, the rule's discrimination between residents and nonresidents was evaluated for a rational basis. Id. at 144. The reasoning of Hawes is accordingly inapplicable in the First Amendment context.

In addition, the balance of interests involved with the District of Puerto Rico's bond requirement, and similar rules in other jurisdictions, see, e.g., id. at 143 n.4, is dramatically different from the instant case. The bond in Hawes was not required of nonresidents wishing to engage in commercial expression, but rather of nonresidents wishing to hale Puerto Rico residents into the federal courts of that district, forcing the latter to incur significant litigation-related expenses. Where the resident defendant prevailed, the costs of litigation would ordinarily have been taxed against the nonresident plaintiff. See Fed. R. Civ. P. 54(d)(1). Because of the likelihood that funds

would need to be collected from a nonresident plaintiff, the risk of harm from unenforceability was, accordingly, higher in Hawes. Conversely, the nature of the restriction was more narrowly tailored, insofar as the rule permitted the district court to waive the bond requirement when it would be so excessive as to preclude a plaintiff's right to sue. No such waiver is available under Article 24 to nonresident advertisers or their resident intermediaries.

### B. **Central Hudson test**

The parties agree that this case involves commercial speech, which is defined as "expression related solely to the economic interests of the speaker and its audience." Central Hudson, 447 U.S. at 561. Although commercial speech is generally entitled to less protection under the First Amendment than other forms of speech, it nonetheless has a claim to safekeeping from unwarranted government intrusion. See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, 425 U.S. 748, 758-70 (1976). Article 24 of the Regulation clearly represents such an intrusion as to El Día, and, as we will explain, as to its nonresident client/advertisers because it fails to meet the second and third prongs of the Central Hudson test.

### 1. **Advancing governmental interest**

In order to satisfy the second prong of Central Hudson, "a governmental body seeking to sustain a restriction on commercial

speech must demonstrate that the harms it recites are real and that its restrictions will in fact alleviate them to a material degree." Edenfield v. Fane, 507 U.S. 761, 770-71 (1993). "[M]ere speculation or conjecture" is insufficient to fulfill these requirements. Id. at 770.

We agree with the district court that DACO fails to meet this standard: "The record lacks evidence that support the allegations that the harms Article 24 is intended to remedy are real," and "the bond requirement provides only ineffective and remote support" for DACO's asserted purpose of enforcing the consumer protections contained in the Regulation. El Día, 313 F. Supp. 2d at 61.

### a. Demonstration of harms

DACO alleges that the harm Article 24 prevents is difficulty enforcing the Regulation's consumer protections against nonresident advertisers. Article 24 addresses this harm, according to DACO, by providing a mechanism for in personam jurisdiction over, and funds for the payment of fines or damages charged to, advertisers who often lack assets in Puerto Rico. But DACO has failed to provide any evidence, other than conclusory assertions, that nonresident advertisers pose a greater enforcement problem than resident advertisers, who are not subject to the bond requirement. Neither has it justified the distinction drawn in Article 24(B) between resident intermediaries, who must act as

-11-

guarantors of their advertisers' compliance with the bond requirement, and nonresident intermediaries, who are not obliged to act as guarantors.[7]

DACO argues that it need not provide empirical data to meet the second prong of <u>Central Hudson</u>, but rather that speech restrictions can be justified solely on "history, consensus, and 'simple common sense.'" <u>Florida Bar</u> v. <u>Went For It, Inc.</u>, 515 U.S. 618, 628 (1995) (quoting <u>Burson</u> v. <u>Freeman</u>, 504 U.S. 191, 211 (1992)). The Supreme Court recognized in <u>Florida Bar</u>, however, that the government's burden is not met when a "State offer[s] <u>no</u> evidence or anecdotes in support of its restriction . . . ." <u>Id.</u> (emphasis in original) (explaining finding of First Amendment violation in <u>Edenfield</u>). That is exactly the case here.

The only available evidence concerning the Regulation's enforcement directly contradicts DACO's assertion that it might have difficulty enforcing the Regulation against nonresident advertisers. DACO estimates that it imposed approximately 355 fines against resident advertisers for violations of the Regulation between March and July 2003, although it was able to collect on only 318. <u>See</u> Defendant's Answers to Plaintiff's Supplementary Set

---

[7] On its face, Article 24(D) could arguably apply to both resident and nonresident intermediaries, prohibiting both from broadcasting, in Puerto Rico, advertisements for which no bond has been posted. Read in context, however, it is not clear that Article 24(D) applies to nonresident intermediaries, and, at any rate, there is no indication that DACO has ever sought to enforce the prohibition contained therein against nonresident intermediaries.

of Interrogatories at 3, <u>El Día, Inc.</u> (No. 00-2631). In contrast, there was no evidence of difficulty enforcing fines levied against nonresident advertisers. DACO has no record of any resolution or adjudication requiring execution of a bond posted by a nonresident advertiser or a resident intermediary. <u>See</u> Defendant's Answers to Plaintiff's First Set of Interrogatories at 5-6, <u>El Día, Inc.</u> (No. 00-2631). Plainly, DACO has failed to demonstrate that the harm it seeks to avoid with Article 24 is real.

### b. Evidence of material effect

A "regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." <u>Central Hudson</u>, 447 U.S. at 564. Thus, even if there were a documented enforcement problem with regard to nonresident advertisers, DACO would still have to demonstrate that Article 24 has a material effect thereon.

Aside from Article 24, the Regulation is facially applicable to both resident and nonresident advertisers: it is aimed at protecting Puerto Rico consumers from false advertisements and illicit merchandising practices regardless of who engages in such actions or where they originate. Nevertheless, it is mostly unenforced against a large segment of the nonresident advertising trade, and the resident intermediaries therefor. DACO was able to produce records of only seven entities having obtained bonds in compliance with Article 24, <u>see</u> Defendant's Answers to Plaintiff's

-13-

First Set of Interrogatories, exhibits 1-7, and it has not alleged that any additional, unrecorded bonds exist. Countless other nonresident advertisers reach Puerto Rico residents every day, without having posted a bond, through media ranging from newspapers to satellite television to direct mail. DACO, however, could identify records of only three fines having been imposed for violations of Article 24, two of which were against El Día.[8] See Defendant's Answers to Plaintiff's Supplementary Set of Interrogatories at 2.

There is no evidence that DACO has attempted to enforce the Regulation, including the provisions of Article 24, against the vast majority of newspapers, magazines, television broadcasts, internet announcements, satellite communications, and other varieties of information media with access to consumers in Puerto Rico. From all of these sources, the Puerto Rican consumer is subjected to, and in many cases is the intended target of, commercial messages directly from nonresident advertisers. Many of these messages are broadcast within Puerto Rico via nonresident intermediaries,[9] to whom Article 24(B)'s resident intermediary requirements do not apply and against whom Article 24(D)'s

---

[8] This figure, reported by DACO, apparently does not include the $750 fine against El Día which gave rise to the instant litigation.

[9] For example, the New York Times, the Wall Street Journal, and the Miami Herald are all available daily in Puerto Rico via news stands, delivery by mail, and access over the internet.

-14-

prohibition on broadcasting has not been enforced. Meanwhile, DACO issued well over three hundred fines for violating the Regulation to resident advertisers in a single four-month period of 2003.

Thus, Article 24 imposes no restraint on the resident advertisers who are the principal violators of the Regulation, nor does it improve DACO's apparently limited ability to enforce the fines levied against resident violators. Neither has Article 24 restrained nonresident intermediaries, through which myriad advertisements reach Puerto Rico residents every day. Finally, the bulk of incoming advertising traffic remains de facto unsupervised due to DACO's failure to enforce compliance with Article 24's bond requirement. Article 24, therefore, has no material effect on DACO's ability to enforce the other provisions of the Regulation.

## 2. Narrow tailoring

Although we are dealing with commercial speech, "the First Amendment mandates that speech restrictions be narrowly drawn." Central Hudson, 447 U.S. at 565 (internal quotation marks omitted). "The regulatory technique may extend only as far as the interest it serves." Id. The bond requirement has a direct discriminatory effect against nonresident advertisers, who must have the resources to obtain a $25,000 bond before they can engage in commercial speech in Puerto Rico. In effect, it penalizes protected commercial speech preemptively, on the possibility that some commercial speech may be subject to proscription under the

-15-

Regulation. Moreover, Article 24 places a heavy burden on resident intermediaries, who must either post a $25,000 bond or forego advertising revenue from those nonresidents unwilling or unable to supply the bond. Resident intermediaries like El Día are forced, thereby, to serve as guarantors of their nonresident advertisers' compliance with the substantive requirements of the Regulation.

DACO makes no effort, however, to explain why less drastic methods of ensuring nonresident advertisers' compliance with the Regulation are not available. It argues only that the narrow tailoring prong of <u>Central Hudson</u> requires only a "reasonable fit" between the restriction and the government interest it serves. <u>See</u> <u>Bd. of Trustees</u> v. <u>Fox</u>, 492 U.S. 469, 480 (1989). A "reasonable fit," however, "represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." <u>Id.</u> (internal quotation marks omitted). In the instant case, given the speculative nature of, and Article 24's failure to have an effect on, the purported nonresident enforcement problem, the net is cast too broadly for such a small catch.

### III. <u>Conclusion</u>

Because we find no evidence of an enforceability problem particular to nonresident advertisers, nor of Article 24 having any material effect thereon, and because the bond requirement it establishes is not narrowly tailored to achieve the government's interest in enforcing the Regulation, we find that Article 24

violates the First Amendment.  Having so decided, we do not reach any other arguments concerning the unconstitutionality of Article 24.  The judgment of the district court is affirmed.

**<u>Affirmed</u>**.

## ARTICLE 24. - RESPONSIBILITY AND BOND OF THE NON-RESIDENT ADVERTISER AND INTERMEDIARIES

Any non-resident advertiser in Puerto Rico, who is interested in broadcasting one or more advertisements in Puerto Rico, must previously deposit with the Department a twenty-five thousand ($25,000.00) dollar bond to cover the imposition of fines for any noncompliance with the provisions, orders and resolutions of these regulations, as well as any pertinent legal remedy in favor of the consumers.

A.        The required bond may be in cash, in an insurance policy collectable in Puerto Rico, or in a document issued by a bondsman registered in Puerto Rico, in favor of the Secretary of the Treasury. If it is in cash, it shall be posted with the Secretary and shall be kept in a special account, or it may be obtained through a guarantor duly authorized for that purpose in Puerto Rico. If it is not available, the same shall be secured through an authorized broker for surplus lines. In all other cases, the bond or insurance document shall be delivered to the Secretary for his safekeeping and custody.

The bond shall be effective for the duration of the advertisement, plus one year from the date of publication of the last advertisement, or the date of expiration of the last advertisement, whichever expires last.

The posting of the required bond entails voluntarily surrendering to the jurisdiction of the Department and of the General Court of Justice of the Commonwealth of Puerto Rico. Any order or document issued by the Department, sent by mail or personally served on the person and address indicated by the advertiser upon the posting of the required bond, shall be deemed sufficient notification. The advertiser shall be responsible for providing the full name and exact address for purposes of the required notice.

B.        Any resident intermediary in Puerto Rico must make sure, before broadcasting an advertisement in Puerto Rico, that the advertiser has posted the required bond.

In order to comply with the requirement, it shall be sufficient to obtain a certified copy of the advertiser's bond certifying so. Said document must state, besides

the date on which it was obtained, the type of bond posted and the date it was consigned with the Department. The intermediary shall keep the document available to the Department throughout the term the advertisement mentioned in the statement is broadcast, plus one year from the last broadcast date.

C.        Said intermediary can also comply with his responsibility under this regulation by assuming the advertiser's responsibility with respect to the posting of the required bond.  In this case one bond is sufficient to cover all the advertisements that the intermediary of non-resident advertisers in Puerto Rico broadcasts.

D.        Advertisers that are non-residents in Puerto Rico, or their intermediaries, may not broadcast in Puerto Rico an advertisement without first posting the bond required by these regulations.

E.        The non posting of the required bond shall be sufficient reason for the Secretary to order the advertiser or his intermediary to cease from broadcasting the unsecured advertisement.