PRO-MAX CORPORATION, A NEVADA CORPORATION, APPELLANT, *v.* PETER FEENSTRA, SHIRLEY FEENSTRA, AND JACK A. FERGUSON, RESPONDENTS.

No. 30774

JACK A. FERGUSON, APPELLANT, *v.* MARY ANN FERGUSON AND PRO-MAX CORPORATION, A NEVADA CORPORATION; AND WESLEY D. ADAMS, RESPONDENTS.

No. 30859

January 31, 2001                         16 P.3d 1074

*Robison Belaustegui Sharp & Low*, Reno; *Newsom, Giffen &*

*Marne,* San Rafael, California, for Appellant/Respondent Pro-Max Corporation and Respondent Mary Ann Ferguson.

*Lemons, Grundy & Eisenberg,* Reno, for Respondent/Appellant Jack A. Ferguson and Respondents Peter Feenstra and Shirley Feenstra.

*Simon & Berman,* Las Vegas, for Respondent Wesley D. Adams.

Before YOUNG, AGOSTI and LEAVITT, JJ.

## OPINION ON REHEARING

*Per Curiam:*

On September 15, 2000, this court issued an opinion in this appeal. Respondents Jack A. Ferguson, Peter Feenstra and Shirley Feenstra timely petitioned for rehearing. In light of the rehearing petition, we withdrew our September 15, 2000, opinion. We now conclude that rehearing is warranted and therefore grant the petition and issue this opinion in place of our previously withdrawn opinion.

The primary issue presented in this appeal requires us to consider the scope of NRS 106.240, which extinguishes certain real property debts ten years after they become due absent recorded extensions, an issue of first impression. We conclude that the district court erred when it determined that the statute is applicable only to bona fide purchasers. For this reason, we reverse the dis-

trict court's judgment that certain notes and deeds of trust are valid and enforceable. However, because the district court prevented certain noteholders from presenting evidence regarding whether Pro-Max should be estopped from asserting NRS 106.240, we remand this case to the district court for further proceedings regarding the estoppel issue. Finally, we affirm the district court's order denying Jack A. Ferguson's request for attorney's fees.

## FACTS

The underlying dispute in this case involves a substantial piece of real property in Verdi, Nevada ("Verdi property"). Pro-Max Corporation is a closely held corporation, which has as its sole asset an eighty-percent interest in the Verdi property. Jack Ferguson ("Jack") served as president of Pro-Max from 1978 through 1996.

In 1982, Pro-Max borrowed money from seven of its shareholders[2] to secure funding for the Verdi property.[3] Pro-Max executed promissory notes to the shareholders, secured by deeds of trust on Pro-Max's interest in the Verdi property. The notes were executed on May 11, 1982, and became due two years later on May 14, 1984. The deeds of trust included a standard provision that the debt would become due upon sale of the property.[4] No payment of principal or interest was ever made by Pro-Max on any of the notes. Although the shareholders and Pro-Max were purportedly unaware of it at the time, NRS 106.240 operates to extinguish any debt upon real property secured by a deed of trust ten years after the debt becomes due unless an extension is written and recorded. The notes were therefore extinguished by operation of the statute on May 14, 1994.

Of the twenty-percent interest in the Verdi property not owned by Pro-Max, Jack personally owned ten percent and his wife, Mary Ann Ferguson ("Mary Ann"), personally owned the other ten percent. In 1990, Jack and Mary Ann commenced divorce proceedings. The judicial proceedings concerning the divorce were complicated, contentious and ongoing for several years after 1990. These proceedings concerned the division of the Fergusons' marital estate.

In March 1996, at a meeting of the board of directors of Pro-

---

[2]Jack Ferguson, Mary Ann Ferguson, James Ginella and Peter and Shirley Feenstra were among the shareholders who loaned money to Pro-Max.

[3]The Verdi property is not income producing but is held as an investment for the benefit of the shareholders.

[4]Over the years, the shareholders loaned additional money to Pro-Max for ongoing expenses related to the Verdi property. No new notes were executed for these subsequent loans.

Max, James Ginella was elected president in place of Jack. At the same meeting, the board of directors agreed to sell Pro-Max's interest in the Verdi property to Wesley Adams. Sometime during the Ferguson divorce proceedings, in 1993 or 1994, Judge Charles McGee had ordered the Verdi property sold pursuant to the divorce settlement. In September 1996, Judge McGee approved the sale of Pro-Max's eighty-percent interest and Mary Ann's ten-percent interest in the Verdi property to Wesley Adams.

Prior to approving the sale to Adams, Judge McGee held several hearings in the family court to consider various alternatives and offers concerning the sale of the Verdi property. During these hearings, attorneys for Mary Ann appeared and told Judge McGee that counsel, in addition to representing Mary Ann, also represented Ginella in his capacity as president of Pro-Max, and were also advising Pro-Max regarding its fiduciary obligations in the sale. These same attorneys also assured Judge McGee that the sale of the Verdi property to Adams would generate enough money to pay the promissory notes, that the notes would be paid from the proceeds of the sale and that Jack would receive his fair share. Judge McGee later testified that had he known the notes were unenforceable, he would have structured the division of the community assets between Jack and Mary Ann Ferguson differently.

In April 1996, Jack transferred his Pro-Max notes and his ten percent interest in the Verdi property to Peter B., Inc., of which Peter Feenstra was apparently president. Seven days after Judge McGee approved the sale of the Verdi property to Adams, Feenstra and Peter B., Inc., recorded a notice of default on the deeds of trust held by them and commenced foreclosure proceedings.[5]

In December 1996, the Pro-Max board of directors purportedly became aware of NRS 106.240 and its effect of extinguishing the notes. Accordingly, the Pro-Max board of directors approved an offer to ''amend and reinstate the Notes and to continue the lien of the Deeds of Trust and waive the application of NRS 106.240 in consideration for and on the condition that the note holders agree to the terms of the amendment.'' A letter delineating the offer was sent to all of the noteholders. The relevant amendments were as follows: (1) the payment terms were changed to coincide with Adams' payment terms; (2) the Verdi property was to be released free and clear of any encumbrances, including the deeds of trust; (3) any costs related to the sale of the property to Adams and approved by the board of directors were to be paid from Adams' payments before any distributions were made to the note-holders; and (4) the noteholders were to release all claims against

---

[5]The foreclosure was withdrawn on February 14, 1997.

each other in connection to the sale of the Verdi property to Adams.

All of the noteholders, except the Feenstras and Peter B., Inc., accepted Pro-Max's offer. Thereafter, Pro-Max, Mary Ann Ferguson and Wesley Adams (hereinafter collectively referred to as "Pro-Max") commenced this action for declaratory relief concerning the validity of the remaining notes, asserting that the notes were unenforceable by operation of NRS 106.240.[6]

## DISCUSSION

### NRS 106.240

NRS 106.240 creates a conclusive presumption that a lien on real property is extinguished ten years after the debt becomes due. Specifically, NRS 106.240 provides as follows:

> The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.

In this case, it is undisputed that no written agreements to extend the notes and deeds of trust were ever executed or recorded. Therefore, under the plain language of the statute, the deeds of trust were conclusively presumed to have been satisfied in 1994, which is ten years after the notes became due and two years before Judge McGee approved the sale of the Verdi property to Adams.

The district court determined that the legislature intended for the statute to protect bona fide purchasers, not to "let a corporation or a group of people get together and tell one of the people that held a note, 'You do this, this and this within six days or you're out.'" The district court declared that, therefore, the notes were not extinguished by the statute. We conclude that the district court erred.

Initially, we note that our review of the district court's inter-

---

[6]As noted, Jack had previously transferred his interests in the promissory notes to Peter B., Inc. When the lawsuit seeking to have the notes declared void was filed, Jack agreed to take the notes back, and they were reassigned to him. The district court ordered the caption of the case amended to substitute Jack as a defendant in place of Peter B., Inc.

pretation of a statute is de novo. *State, Dep't of Mtr. Vehicles v. Frangul,* 110 Nev. 46, 48, 867 P.2d 397, 398 (1994). " ' "Where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." ' " *Erwin v. State of Nevada,* 111 Nev. 1535, 1538-39, 908 P.2d 1367, 1369 (1995) (quoting *Charlie Brown Constr. Co. v. Boulder City,* 106 Nev. 497, 503, 797 P.2d 946, 949 (1990) (quoting *State v. Jepsen,* 46 Nev. 193, 196, 209 P. 501, 502 (1922))). We conclude that the statute is clear and unambiguous. That being the case, no further interpretation is required or permissible. Under the plain language of the statute, the deeds of trust are conclusively presumed to have been satisfied and the notes discharged. This conclusive presumption is plain, clear and unambiguous. No limitation of the statute's terms to bona fide purchasers can be read into the statute.[7]

*Estoppel*

Jack and the Feenstras did not accept Pro-Max's offer to amend and reinstate their notes. As a result, Jack's and the Feenstras' notes were not paid because NRS 106.240 operated to extinguish their notes. However, Jack and the Feenstras argue that Pro-Max should be estopped from asserting the statute because Pro-Max represented to the district court in the Fergusons' divorce proceedings that the notes would be paid.

The elements of estoppel are as follows:

> "(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped."

*NGA #2 Ltd. Liab. Co. v. Rains,* 113 Nev. 1151, 1160, 946 P.2d 163, 169 (1997) (quoting *Cheqer, Inc. v. Painters & Decorators,* 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982)).

According to Jack and the Feenstras, Pro-Max knew about NRS

---

[7]We further note that the brief legislative history of NRS 106.240 offers nothing to support the argument that the statute was only intended to apply to bona fide purchasers. The statute was first enacted in 1917. In 1965, the legislature made amendments to the statute, adding a procedure for extending deeds of trust through written agreement and recordation. At that time the legislature could have added language limiting the application of the statute to bona fide purchasers, but it did not. From this, we conclude that the legislature did not intend for the statute to be so limited.

106.240 and its effect on the notes at the time of the Fergusons' divorce proceedings. Further, Jack and the Feenstras contend that Pro-Max intended that its conduct at the Fergusons' divorce proceedings be acted upon by the noteholders. Finally, Jack and the Feenstras assert that because they were ignorant of the true state of the facts, they relied to their detriment on the conduct of Pro-Max. Thus, Jack and the Feenstras argue that Pro-Max should be estopped from asserting that the notes are extinguished pursuant to NRS 106.240.

Although Jack and the Feenstras asserted the affirmative defense of estoppel in their answer, and argued the defense of estoppel in their opening statement, Jack and the Feenstras contend that the district court denied them the opportunity to present evidence regarding the estoppel issue at trial. Jack and the Feenstras claim that because the district court had already decided to rule in their favor, the district court was impatient and did not want to hear evidence regarding the estoppel issue.

In support of this contention, Jack and the Feenstras argue that they planned to call five defense witnesses to testify at trial. Two of the witnesses, Peter Feenstra and Judge Charles McGee, did testify. However, the accountant for Pro-Max was not permitted to testify. Jack and the Feenstras assert that the accountant would have testified to matters regarding the estoppel issue. Nevertheless, the district court did not hear the accountant's testimony because ''[i]t's not going to be necessary for my decision in this case.''

Further, the district court did not permit Jack and the Feenstras to read portions of James Ginella's deposition into the record. Ginella is the president of Pro-Max, and Jack and the Feenstras assert that his deposition testimony would have bolstered their estoppel argument. However, the district court stated, ''I don't think I need to hear the [Ginella] deposition. Who's your next witness and why is he going to be called? I heard all the information I need to make a decision. Who do you want to call and why?''

Finally, the district court did not permit Jack to testify. Jack and the Feenstras argue that Jack was the most important witness to their case. However, the district court stated, ''I am going to make my decision, now, without [Jack's] testimony.'' The district court then rendered its decision from the bench, ruling in favor of Jack and the Feenstras. The district court's ruling was based on its interpretation of NRS 106.240; thus, the district court did not consider evidence on the estoppel issue, nor did it make any findings of fact regarding estoppel.

Because the district court did not permit Jack and the Feenstras to present evidence on the estoppel issue, we are unable to con-

clude whether the facts of this case warrant application of the doctrine. Specifically, we do not know if Pro-Max knew of the existence of NRS 106.240 and its effect on the notes at the time of the Fergusons' divorce proceedings. Further, we do not know if Pro-Max intended its conduct to be acted upon by the noteholders. Finally, we do not know if Jack and the Feenstras were ignorant of the true state of facts, and if they relied to their detriment on the conduct of Pro-Max. Because the district court prevented Jack and the Feenstras from presenting evidence on the foregoing elements of estoppel, we conclude that this case should be remanded to the district court for further proceedings regarding the estoppel issue.

## CONCLUSION

We conclude that the conclusive presumption contained in NRS 106.240 clearly and unambiguously applies without limitation to all debts secured by deeds of trust on real property. We therefore reverse the district court's judgment that the statute only protects bona fide purchasers and therefore does not extinguish the debt owed to Jack and the Feenstras. However, because the district court prevented Jack and the Feenstras from presenting evidence on the estoppel issue, we remand this case to the district court for further proceedings regarding the estoppel issue. Finally, we affirm the district court's order denying attorney's fees to Jack.