G. Otto HOLTA, and William P. Bre-
desen, Jr., Trustee, Appellants
and Cross–Appellees,

v.

CERTIFIED FINANCIAL SERVICES,
INC., a Washington Corporation,
Appellee and Cross–Appellant.

Nos. S–9074, S–9114.

Supreme Court of Alaska.

June 28, 2002.

David J. Schmid and Eric R. Cossman, Law Offices of David J. Schmid, Anchorage, for Appellants/Cross–Appellees.

Michael W. Price and Sabrina E.L. Fernandez, Price & Price, Anchorage, for Appellee/Cross–Appellant.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

The superior court granted summary judgment to Certified Financial Services, holding that the six-year statute of limitations for contracts barred Otto Holta's 1997 nonjudicial foreclosure action against Certified Financial's property. Holta appeals, contending that his action is not time barred. We reverse, holding that Holta's foreclosure action was not time barred and that his deed of trust had not been extinguished by earlier municipal tax foreclosure proceedings. Because we reverse, we need not consider Certified Financial's cross-appeal, which seeks an increase in its award of prevailing-party attorney's fees.

## II. FACTS AND PROCEEDINGS

The facts are complicated but essentially undisputed. In August 1987 Julia Cooper executed a note promising to pay $560,610 to four beneficiaries: Northern Commercial Company, Aubrey Bennett, Karen Lindeen, and Duplesse & Associates, Inc. The note was secured by a recorded deed of trust against Anchorage property known as the Essex Square Subdivision, which consisted of sixty undeveloped lots. Cooper planned to develop a residential subdivision at Essex Square; the four Cooper Note beneficiaries were subcontractors that Cooper had hired to work on the subdivision or that Cooper owed money for past work on other ventures.

The Cooper Note called for payment by November 15, 1989:

All sums owed by the undersigned must be paid on or before November 15, 1989. If the total sum is not paid by November 15, 1989, the entire principal sum shall at once become due and payable at the option of the holders of this Note.

The note also provided that Cooper "expressly agree[d] that this Note or any payment thereunder may be extended or renewed from time to time."

In September 1987 Cooper sold twenty-seven of the sixty Essex Square lots to another party. The Cooper Note beneficiaries executed a partial reconveyance to Cooper, which released the twenty-seven newly sold lots, leaving thirty-three lots subject to the August 27 Cooper Deed of Trust.

Cooper later ran into serious financial problems developing the Essex Square Subdivision and eventually filed for bankruptcy. While the bankruptcy was pending, Cooper's husband, Clevey Cooper, convinced three of the four Cooper Note beneficiaries—all but Duplesse & Associates—to reduce the amount owed on the Cooper Note. In June 1989, approximately five months before the note matured, the three beneficiaries signed an "Amendment to Deed of Trust and Deed of Trust Note," purporting to reduce Cooper's total debt from $560,610 to $306,351. Cooper did not sign or record the amendment.

By the time the Cooper Note reached its original maturity date in November 1989, the property's market value had fallen below the note's $560,610 face value; accordingly, the trustee in the Cooper bankruptcy proceeding abandoned the property to the Coopers.

The following year, Cooper sued Duplesse & Associates (the beneficiary that had not signed the Cooper Amendment), seeking to clear the cloud on the property by canceling Duplesse's interest under the deed of trust. The superior court entered judgment for Cooper and canceled Duplesse's interest in December 1990.

At about the same time, the Coopers determined that they could not afford to complete the Essex Square Subdivision. They quitclaimed title to the thirty-three remaining lots to Cooper's nephew, Michael Curry. The deed expressly provided that Curry assumed all obligations under the Cooper Deed of Trust. Curry was aware of the June 1989 note amendment, knew that it extended the original payment deadline, and understood that the reduced amounts reflected in the amended note were the amounts that he had assumed. Curry recorded the quitclaim deed—but not the original or amended notes—on March 27, 1991.

The following year, the Municipality of Anchorage and the Internal Revenue Service initiated foreclosure proceedings against the Essex Square property because Curry had failed to pay taxes. The superior court issued a clerk's deed transferring the property to the municipality on November 17, 1993. The municipality then scheduled a public auction to sell the land on August 24, 1994. Two days before the municipal auction, the IRS conducted an auction to sell Curry's right to redeem the Essex Square properties from municipal foreclosure. At the IRS auction, Greencrest Investments, Inc., and William Markham (collectively, Greencrest) bought Curry's rights of redemption. The following day Greencrest redeemed the properties by paying Curry's delinquent municipal taxes. The municipality canceled its tax auction and quitclaimed the Essex Square lots to Greencrest on August 24.

Greencrest eventually ran into its own financial problems and failed to meet obli-

gations to Certified Financial that Greencrest had separately secured by a deed of trust against the Essex Square lots. On July 11, 1996, Certified Financial acquired title to Essex Square from Greencrest by statutory deed in lieu of foreclosure.

Meanwhile, Holta had acquired all interest in the original Cooper Note from the Cooper Note beneficiaries. Holta bought Northern Commercial's interest on August 23, 1994 for $2,000. Bennett and Lindeen assigned their interests to Holta on October 11, 1996, for an undisclosed percentage of any money Holta might collect. And as already stated, the superior court had eliminated the interest of the fourth Cooper Note beneficiary, Duplesse. These conveyances set the stage for the present litigation.

Holta initiated nonjudicial foreclosure proceedings against the Essex Square property by recording a notice of default and sale in November 1997. Certified Financial responded by filing a superior court action to quiet title and enjoin Holta from foreclosing. In a subsequent motion for summary judgment Certified Financial asserted that the six-year statute of limitations for contracts barred Holta's action. The superior court granted Certified Financial's motion for summary judgment. The court ruled that the six-year statute of limitations for an action to foreclose on the Cooper Deed of Trust started running on November 15, 1989—when the underlying note fell due—and therefore expired on November 15, 1995. The court thus concluded that the statute of limitations barred Holta's November 1997 action. The court entered final judgment against Holta, awarding costs and attorney's fees to Certified Financial.

Holta appeals, challenging the summary judgment order; Certified Financial cross-appeals, contesting the amount of the award of attorney's fees.

## III. DISCUSSION

### A. Standard of Review

"This court reviews a grant of sum-

mary judgment de novo."[1] We "will affirm a grant of summary judgment if the evidence in the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[2]

### B. Analysis

The superior court ruled that a deed of trust is subject to the same statute of limitations as the underlying note and that actions based on both instruments are governed by the six-year statute of limitations for contracts set out in former AS 09.10.050.[3] Holta does not dispute that a six-year limit governs both an action on the note and an action on the deed of trust; but he does dispute the assumption that this six-year limit expires at the same time for each action.[4] This argument requires us to consider how the six-year statute of limitations affects the note and the deed of trust.

#### 1. How the six-year statute of limitations applies to the deed

Because the deed of trust failed to specify a maturity date, Holta argues, the court should have applied AS 34.20.150(a) to determine when the six-year statute of limitations began running on the deed of trust. This provision states:

> The date of maturity of an instrument creating a lien upon real property is considered to be 10 years from the date of the instrument, unless
>
> (1) the period of the instrument is disclosed by the terms of the instrument; or
>
> (2) another instrument extending the period of the first instrument or a memo-

randum of payment of the first instrument is recorded.

But Certified Financial argues that the Cooper Deed of Trust incorporated the terms of the Cooper Note, which in turn specified that "[a]ll sums owed by the undersigned must be paid on or before November 15, 1989." Certified Financial reasons that even though the Cooper Note went unrecorded, because the two documents were contemporaneously executed, the deed should be deemed to satisfy AS 34.20.150(a)'s requirement of disclosing the deed's maturity date—as reflected in the note. To support this argument, Certified Financial emphasizes that when a promissory note and deed are executed simultaneously, they generally must be read together as one document to ascertain the parties' intent.[5]

But we are not concerned here with determining the original contracting parties' intent. Instead, we must determine whether AS 34.20.150(a) allows its ten-year default maturity date to be overridden by a maturity date that can be found only in an unrecorded note that the deed merely incorporates by reference. This determination hinges on AS 34.20.150(a)'s purpose—to provide subsequent purchasers with record knowledge and reasonable certainty regarding the vitality of liens recorded against the property. Alaska Statute 34.20.150(a) attains this purpose by establishing a ten-year default maturity date; the statute allows no exception to the default date unless a different date is expressly stated in either the recorded lien itself[6] or some other recorded document that extends the lien.[7] Given the statute's underlying purpose, we conclude that its ten-year default

---

**1.** *Davis v. Dykman,* 938 P.2d 1002, 1006 (Alaska 1997).

**2.** *Id.*

**3.** Former AS 09.10.050 provided, in relevant part:
Unless the action is commenced within six years, a person may not bring an action
(1) upon a contract or liability, express or implied, excepting those mentioned in AS 09.10.040[.]

**4.** Holta also contends that the note is a negotiable instrument and as such is subject to the six-year time limit set out in Alaska's Uniform Commercial Code, *see* AS 45.03.118(a), rather than

the six-year limit for contracts set out in AS 09.10.050. He theorizes that a more lenient maturity date applies to the note under the UCC provision. Our conclusion that Holta prevails under the six-year contract limit makes it unnecessary to consider his negotiable instrument theory.

**5.** *See Moening v. Alaska Mut. Bank,* 751 P.2d 5, 8–9 (Alaska 1988).

**6.** *See* AS 34.20.150(a)(1).

**7.** *See* AS 34.20.150(a)(2).

maturity date cannot be overridden by a deed of trust provision incorporating the terms of a contemporaneously executed note unless the note itself is also recorded.

Here, the Cooper Deed's default maturity date is August 1997—ten years after Cooper recorded the deed. Neither the unrecorded note nor the later unrecorded extension amendment override this date. Under AS 34.20.150(a), then, the six-year statute of limitations to foreclose on the deed began to run on the August 1997 default maturity date and does not expire until August 2003.

### 2. How the six-year statute of limitations applies to the note

█ The facts of this case require us to consider an additional wrinkle: in *Dworkin v. First National Bank of Fairbanks,* we recognized that when the statute of limitations on a deed of trust exceeds the limit for an action on the underlying note, the shorter period that applies to the note also governs the action on the deed; in such a case "the foreclosure action is subject to the same period of limitations as the underlying debt."[8] Here, even though AS 34.20.150(a) applies a default maturity date that extends the six-year statute of limitations for foreclosure until August 2003—sixteen years after the deed's execution—*Dworkin* makes the statute of limitations on the note controlling if it expires sooner and would preclude Holta from foreclosing on the deed if the six-year limit for an action on the Cooper Note had already expired when he commenced his foreclosure.

As indicated above, the original Cooper Note required payment on or before November 15, 1989. If the six-year statutory limit began running then, the time for filing an action on the original note would expire on November 15, 1995—well before Holta actually brought his foreclosure action in November 1997. But in 1989 an amendment ostensibly extended the note's original due date by nearly three years—until June 20, 1992; this

would generate a corresponding extension of the deadline for filing an action on the note and deed until June 20, 1998—after Holta actually began foreclosure. Assuming, then, that the 1989 amendment is valid, *Dworkin* would permit Holta's action. It thus becomes crucial to determine when the six-year limit expired for an action on the Cooper Note.

On this point Holta argues that the June 1989 amendment extended the statute of limitations. On June 20, 1989, while the Cooper bankruptcy was pending and several months before the Cooper Note fell due, Cooper persuaded three of the four beneficiaries to sign an "Amendment to Deed of Trust and Deed of Trust Note" reducing the amount Cooper owed on the note and extending the date for payment to June 20, 1992. Holta maintains that this amendment delayed the six-year limit for actions on the note from expiring until June 20, 1998—six years after the amended due date.

█ Certified Financial counters that the 1989 amendment is invalid for several reasons. It first argues that Cooper never signed the amendment. But the original note authorized its holders to extend the deadline for payment unilaterally; hence, the note did not require Cooper's consent to an extension. And in any event, the record establishes that Cooper agreed to the extension. The extension was negotiated by Cooper's husband, Clevey, who undisputedly had authority to act as her agent. Furthermore, Michael Curry, Cooper's eventual successor-in-interest, acknowledged the amendment and expressly assumed its obligations.[9] Certified Financial's effort to portray the amendment as an inchoate agreement thus fails.

█ Certified Financial next argues that the June 1989 amendment to the original note was invalid because the automatic stay in the Coopers' bankruptcy prevented anyone but the trustee from amending the note.

---

**8.**   444 P.2d 777, 782 (Alaska 1968).

**9.**   We need not consider whether the statute of frauds applies to the June 1989 note extension. *See* AS 09.25.010; *but see Winters By and Through McMahon v. George Mason Bank,* 94

F.3d 130, 135–36 (4th Cir.1996). Because the original note gave its holders unilateral power to extend the date for payment and thus made Cooper's signature unnecessary, the note satisfied the statute's requirements if they applied.

Holta responds that Certified Financial lacks standing to assert a violation of the bankruptcy stay, that it is estopped from arguing this issue, and that the amendment did not violate the stay in any event.

The bankruptcy code specifies that a bankruptcy petition "operates as a stay" on "any act to create, perfect, or enforce any lien against the property of the estate." [10] Here, the amendment does not appear to "create, perfect, or enforce" a lien; it simply extends a note secured by an otherwise valid lien.[11] Moreover, the bankruptcy trustee ultimately abandoned Essex Square to the Coopers. Cooper then filed an action against Duplesse & Associates, the only holder of the original note that had not signed the amendment, which established that Duplesse had no further interest in the property. And when Cooper later conveyed her interest in the property to Michael Curry, Curry acknowledged the amendment and expressly assumed its obligations. These post-bankruptcy actions effectively ratified the amendment and cured any potential deficiency arising from its execution during the bankruptcy stay.

We must next consider whether the amendment fails because it was not recorded. Certified Financial identifies statutory provisions requiring extensions to be recorded in two situations: under AS 34.20.140, when payment is made on a contract secured by a real estate lien, the payment will not extend the lien unless a memorandum of payment is recorded; [12] and under AS 34.20.150(a)(2), when an instrument such as a deed of trust creates a lien without specifying its maturity date, an instrument extending the earlier instrument will operate to extend the statutorily specified default maturity date only if the later instrument is recorded.[13]

Neither provision applies here. The former statute has no bearing because Holta seeks to enforce an extension arising from the original note's amendment, not its payment. And both the former and the latter are irrelevant because the only lien at issue here is the Cooper Deed of Trust; [14] the 1989 amendment extends only the original note, not the deed, and so does not qualify as an instrument extending either "the lien" or "the maturity date of an instrument creating a lien." Because the extension of the Cooper Note did not affect the deed's statutorily specified ten-year date of maturity under AS 34.20.150(a), the amendment's validity did not hinge on its being recorded.

The amendment thus extended the note's due date to June 20, 1992; this in turn

---

10. 11 U.S.C. § 362(a)(4).

11. *See In re Morton,* 866 F.2d 561, 564 (2d Cir. 1989).

12. AS 34.20.140 provides:

> Where the payment of an existing contract (a bill of exchange, promissory note, bond, or other evidence of indebtedness) is secured by an instrument creating a lien upon real estate, payment on the contract does not extend the lien beyond its original or extended period as against subsequent purchasers, optionees, mortgagees, creditors, or persons acquiring a lien upon the real estate, unless
> (1) a memorandum of the payment is recorded in the office of the recording district where the property is located;
> (2) the memorandum is recorded before the end of the statutory time for bringing an action upon the existing contract and extensions as exhibited by the terms of the recorded instrument; and
> (3) the memorandum is signed and acknowledged by the owner or the representative of the owner of the existing contract of indebtedness.

13. AS 34.20.150(a) provides, in relevant part:

> (a) The date of maturity of an instrument creating a lien upon real property is considered to be 10 years from the date of the instrument, unless
> (1) the period of the instrument is disclosed by the terms of the instrument; or
> (2) another instrument extending the period of the first instrument or a memorandum of payment of the first instrument is recorded.

See *Dworkin v. First Nat'l Bank of Fairbanks,* 444 P.2d 777, 781 n. 19 (Alaska 1968) (holding that AS 34.20.150's ten-year presumptive date of maturity does not apply when an instrument explicitly sets forth a maturity date).

14. *See* Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 1.1, at 1 (4th ed.2002) (distinguishing between a note and a mortgage). This court has used the terms deed of trust and mortgage interchangeably. *See, e.g., K & L Distributors, Inc. v. Kelly Elec., Inc.,* 908 P.2d 429, 432 & n. 5 (Alaska 1995); *Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks,* 478 P.2d 829, 831–32 (Alaska 1970) (stating that a "deed of trust is 'a mortgage in effect' " and "only creates a lien").

extended the expiration of the six-year statute of limitations for any action on the note to June 20, 1998. Because Holta's November 1997 notice of foreclosure preceded this deadline, the statute of limitations did not bar his action.

### C. Tax Foreclosure

■ The superior court's decision to enter summary judgment against Holta for violating the statute of limitations made it unnecessary for the court to consider Certified Financial's alternative summary judgment argument. Because the argument presents a question of law and arises on undisputed facts, we consider it here.[15]

■ Certified Financial theorizes that the Municipality of Anchorage's 1994 tax foreclosure action against Curry's property extinguished the Cooper Deed of Trust and gave Curry's successor, Greencrest, clear title to the Essex Square property. To support this theory, Certified Financial cites 26 U.S.C. § 6339(c):

(c) Effect of junior encumbrances.—certificate of sale of personal property given or a deed to real property executed pursuant to section 6338 shall discharge such property from all liens, encumbrances, and titles over which the lien of the United States with respect to which the levy was made had priority.

Certified Financial points out that, in keeping with § 6339(c), the IRS issued a notice of sale in 1994 confirming that all liens "over which the lien of the United States with respect to which the levy was made had priority" are discharged when a "deed to real property [is] executed pursuant to [26 U.S.C. § ]6338."

But Certified Financial reads too much into the IRS notice. The notice merely disclaims certain encumbrances that are extinguished when an IRS tax sale results in the issuance of a deed under 26 U.S.C. § 6338. Yet here the IRS did not issue a deed to Essex Square under this statute.[16] Instead, it only sold Curry's right to redeem Essex Square from the Municipality of Anchorage; to evidence the sale of this right, Curry gave Greencrest a quitclaim deed. Absent a deed executed by the Secretary of the Treasury under § 6338, then, the IRS sale of Curry's right of redemption did not extinguish the Cooper Deed of Trust lien. Certified Financial does not argue that the levy of the United States had priority over the Cooper Deed of Trust. In fact the levy did not, since the Cooper Deed of Trust was senior to the IRS lien because it was recorded before the IRS lien against Curry, and, most relevantly, before Curry acquired the property. Although the relevant statute, 26 U.S.C. § 6323(a), is somewhat obscure on this point, the case law authoritatively has interpreted this subsection to "subordinate the tax lien to perfected security interests arising before the filing of the tax lien...."[17]

Certified Financial further argues that the municipality obtained title to Essex Square, subject only to the IRS tax lien, because AS 29.45.450(b) provides that when a superior court issues a clerk's deed in a tax foreclo-

---

**15.** *See Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 912 (Alaska 2000) (intervention); *Bennett v. Hedglin*, 995 P.2d 668, 671 (Alaska 2000) (insurance application).

**16.** 26 U.S.C. § 6338 provides:

(a) Certificate of sale.—In the case of property sold as provided in section 6335, the Secretary [of the Treasury] shall give to the purchaser a certificate of sale upon payment in full of the purchase price. In the case of real property, such certificate shall set forth the real property purchased, for whose taxes the same was sold, the name of the purchaser, and the price paid therefor.

(b) Deed to real property.—In the case of any real property sold as provided in section 6335 and not redeemed in the manner and within the time provided in section 6337, the Secretary shall execute (in accordance with the laws of the State in which such real property is situated pertaining to sales of real property under execution) to the purchaser of such real property at such sale, upon his surrender of the certificate of sale, a deed of the real property so purchased by him, reciting the facts set forth in the certificate.

(c) Real property purchased by United States.—If real property is declared purchased by the United States at a sale pursuant to section 6335, the Secretary shall at the proper time execute a deed therefor, and without delay cause such deed to be duly recorded in the proper registry of deeds.

**17.** *Slodov v. United States*, 436 U.S. 238, 257, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

sure, as it did here, the "[c]onveyance gives the municipality clear title, except for prior recorded tax liens of the United States and the state." [18] But Holta responds that this statute did not apply here because Greencrest acted as Essex Square's previous owner and simply exercised Curry's right of redemption.

Holta's response has merit. In *Jefferson v. Metropolitan Mortgage & Securities Co. of Alaska*, we acknowledged the general rule that "when a municipality forecloses on property for failure to pay taxes, it receives a new title to the property free from all encumbrances. A buyer of the property at the subsequent tax sale receives a new, independent title and not that of the former owner." [19] But we described an exception that applies when the record owner buys back the property by paying delinquent taxes:

> [I]n Alaska, even after [the] time of redemption has run, the record owner may still purchase the property by paying the delinquent taxes, so long as the property has not yet been sold to a third party at a tax sale. .... It is the general rule that when the owner of record redeems or repurchases his property, his purchase merely operates as a payment of the taxes and he receives the same title he held before the municipality's foreclosure.[20]

In the present case, after Greencrest bought Curry's right of redemption from the IRS, the municipality canceled its scheduled tax auction and allowed Greencrest to buy back the property without competition by paying Curry's delinquent taxes. Because Greencrest stood in Curry's shoes and redeemed the property as his assignee, *Jefferson* instructs us to view the transaction as leaving Greencrest with "the same title [Curry] held before the municipality's foreclosure." [21]

18. See also AMC 12.15.070(D) ("Properties transferred to the municipality by tax deed will be subject to redemption or repurchase by an owner as provided by AS 29.45.").

19. 503 P.2d 1396, 1399 (Alaska 1972) (footnote omitted).

20. *Id.*

## IV. CONCLUSION

Because Holta's right to foreclose the Curry Deed was not barred by the statute of limitations and because the lien created by that deed was not extinguished by the 1994 municipal tax foreclosure, we REVERSE the judgment and REMAND for further proceedings.[22]

21. *Id.*

22. Our decision to reverse the judgment on its merits also requires us to vacate the superior court's award of prevailing-party attorney's fees to Certified Financial. We therefore need not consider Certified Financial's cross-appeal, which challenges the award as insufficient.