IN THE SUPREME COURT OF THE STATE OF NEVADA

THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS TRUSTEE, FOR THE CERTIFICATEHOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2006-25,
Appellant,
vs.
SFR INVESTMENTS POOL 1, LLC, A NEVADA LIMITED LIABILITY COMPANY,
Respondent.

No. 81604

FILED

SEP 13 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER VACATING AND REMANDING

This is an appeal from a district court order granting summary judgment in an action to cancel a deed of trust as expired under NRS 106.240. Eighth Judicial District Court, Clark County; David M. Jones, Judge.

*Facts*

In 2006, Susan and Nelson Pritz executed a promissory note payable to Countrywide Home Loans, Inc. The note had a maturity date of December 1, 2046, and was secured by a first deed of trust on the Pritzes' home at 4946 Droubay Drive in Las Vegas. Countrywide recorded the deed of trust, which references the note's December 1, 2046 maturity date.

The Pritzes stopped making payments on the note as of January 1, 2008, and in April 2008, Countrywide's trustee recorded a Notice of Default and Election to Sell Under Deed of Trust (the "first notice") with the Clark County Recorder's Office. The notice recited the Pritzes' default in their monthly obligations, advised the Pritzes of their 35-day right to cure

22-28614

under NRS 107.080, and stated that if the default was not cured, "the property may be sold." On August 4, 2008, Countrywide's trustee recorded a Notice of Trustee's Sale, which scheduled a foreclosure sale for August 20, 2008. On August 12, 2008, the Pritzes signed a loan modification agreement with Countrywide that averted the foreclosure sale. This agreement modified the Pritzes' next 60 payments and confirmed that the loan's original maturity date remained December 1, 2046.[1] The next activity shown in the appellate record concerning the note and deed of trust did not take place until 2011, when Countrywide recorded an assignment of its deed of trust to appellant The Bank of New York Mellon (BNYM).

The Pritzes also failed to pay their monthly homeowners association (HOA) dues. In September 2012, after the Pritzes' intervening bankruptcy, the HOA foreclosed its lien on the property and conducted an HOA lien foreclosure sale. Respondent SFR Investments Pool 1, LLC, purchased the property at the sale and recorded the trustee's deed it received.

In October 2013, BNYM's trustee sent the Pritzes a Notice of Default and Notice of Intent to Foreclose, which indicated a default date of May 1, 2009 (the "second notice"). This notice requested an amount to cure that was less than the full obligation and warned that acceleration would occur if the Pritzes did not bring the note current. For reasons unknown, the second notice was not recorded, and seemingly, the trustee did not act on it.

---

[1]It is unclear whether the loan modification agreement was recorded. The document indicates that Countrywide requested recording, but the document does not include the Clark County Recorder's stamp.

 

In April of 2018, BNYM sued the HOA and SFR in federal district court "for quiet title/declaratory relief." In its complaint, BNYM alleged that the HOA rejected its pre-sale tender of the superpriority portion of the HOA lien, such that its first deed of trust survived the HOA's foreclosure sale. SFR filed a motion to dismiss on the ground that the HOA lien foreclosure sale had occurred more than four years prior, so the action was barred by NRS 11.220's four-year statute of limitations. The federal district court granted SFR's motion to dismiss.

BNYM did not appeal the federal court's dismissal order. Instead, BNYM reinitiated non-judicial foreclosure proceedings by recording, on January 16, 2019, its third Notice of Default and Election to Sell (the "third notice"). The third notice, like the second, indicated a May 1, 2009, default date by the Pritzes.

In response to the third notice, SFR filed the underlying complaint against BNYM in district court. In its complaint, SFR seeks to "cancel" BNYM's deed of trust under Nevada's "ancient mortgage" statute, NRS 106.240. SFR alleges that the first notice accelerated the note's maturity date from 2046 to 2008 such that the deed of trust expired ten years later, in 2018, by operation of NRS 106.240, extinguishing BNYM's deed of trust.[2] The district court decided the matter on cross-motions for summary judgment. In its order, the district court granted SFR's motion

---

[2]SFR alternatively sought cancellation because BNYM allegedly did not possess the original wet-ink promissory note. Because SFR does not argue for affirmance on this basis, we do not address this issue on appeal. *See Frazier v. Drake*, 131 Nev. 632, 645 n.11, 357 P.3d 365, 374 n.11 (Ct. App. 2015) (declining to consider an argument that the respondent failed to raise in his answering brief).

based on NRS 106.240, denied BNYM's cross-motion, and enjoined BNYM from further pursuing foreclosure. BNYM appeals.

*Discussion*

This court reviews a district court's summary judgment decision de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate when "the pleadings and other evidence on file demonstrate that 'no genuine issue as to any material facts remains[,] and . . . the moving party is entitled to . . . judgment as a matter of law.'" *Id.*; *see also* NRCP 56(a). The moving party bears the initial burden of proving that no genuine issue of material fact exists for trial. *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602, 172 P.3d 131, 134 (2007). And where, as here, the moving party will bear the burden of persuasion at trial, "that party must present evidence that would entitle it to a judgment as a matter of law in the absence of contrary evidence." *Id.*, 172 P.3d at 134.

*The federal dismissal does not preclude BNYM's defense of SFR's cancellation claim*

As a preliminary matter, SFR argues that the federal court's dismissal order precludes BNYM from defending SFR's cancellation action. BNYM responds that the federal court dismissed its quiet title/declaratory judgment action on statute-of-limitations grounds and did not, in so doing, preclude its ability to foreclose non-judicially or to assert its deed of trust defensively. We agree with BNYM.

To successfully assert claim preclusion, SFR must show that (1) the parties in both actions are the same, (2) the final judgment is valid, and (3) the later action is based on the "same claim" as that asserted in the first case. *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054, 194 P.3d 709, 713 (2008); *see also Bennett v. Fid. & Deposit Co. of Md.*, 98 Nev. 449, 452,

652 P.2d 1178, 1180 (1982) (noting that the party asserting the doctrine of res judicata bears the burden of establishing its elements). Elements one and two are satisfied here. But SFR fails to demonstrate that its claim to cancel BNYM's deed of trust under NRS 106.240 is the same as—or could have been encompassed by, *see Five Star Capital Corp.*, 124 Nev. at 1054-55, 194 P.3d at 713 (applying claim preclusion to "all grounds of recovery that were or could have been brought in the first case")—BNYM's claim for quiet title and declaratory relief in the federal action.

In its federal complaint, BNYM alleged that tender or tender futility satisfied the superpriority portion of the HOA lien, leaving its deed of trust intact and superior to the interest SFR acquired at the HOA lien foreclosure sale. *See 7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A.*, 136 Nev. 62, 66, 458 P.3d 348, 351 (2020) (adopting futility-of-tender exception to formal tender in the HOA lien foreclosure context); *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 134 Nev. 604, 605, 427 P.3d 113, 116 (2018) (holding that a deed-of-trust beneficiary can preserve its deed of trust by tendering the superpriority portion of an HOA lien). SFR's cancellation action, by contrast, is modeled on a California procedure; it asks the court to "cancel" BNYM's deed of trust because its predecessor allegedly accelerated the note's maturity date ahead of filing the first notice in 2008 such that, under NRS 106.240, BNYM's deed of trust expired in 2018. *Cf.* 12 Miller & Starr, *California Real Estate* § 40:113 (4th ed. Supp. 2022). SFR's claim that a former acceleration rendered the underlying contractual obligation "wholly due" under NRS 106.240, extinguishing BNYM's lien, does not involve the same facts and circumstances as BNYM's quiet title claim, in which it sought an affirmative declaration that its deed of trust survived the HOA foreclosure sale based on tender or tender futility. Indeed, SFR concedes as

SUPREME COURT
OF
NEVADA

(O) 1947A

5

much in its supplemental answering brief by stating that "[a] tender in connection with a super-priority lien has no bearing on the invocation and operation of NRS 106.240." BNYM's quiet title/declaratory relief suit therefore did not preclude its ability to defend SFR's cancellation claim and pursue non-judicial foreclosure. *See Facklam v. HSBC Bank USA*, 133 Nev. 497, 499, 401 P.3d 1068, 1070 (2017) ("For over 150 years, this court's jurisprudence has provided that lenders are not barred from foreclosing on mortgaged property merely because the statute of limitations for contractual remedies on the note has passed."); 5 Miller & Starr, *supra*, ("When the power [of sale] is contained in a deed of trust, it can be exercised and the security foreclosed even though the statute of limitations has expired on the underlying debt, at least prior to the time the lien is discharged as an 'ancient mortgage.'"); *see also Boca Park Martketplace Syndications Grp., LLC v. Higco, Inc.*, 133 Nev. 923, 925-26, 407 P.3d 761, 764 (2017) (holding that ordinarily "claim preclusion does not apply where the original action sought only declaratory relief").

Nor does issue preclusion apply. Despite arguing in its supplemental brief that issue preclusion bars BNYM's assertion of an interest in the property based on tender, SFR also acknowledges that the issue of tender is "separate and distinct from the issue of whether the deed of trust is terminated under NRS 106.240." We agree that the issues are distinct. The issue the parties litigated and the federal court resolved was whether the statute of limitations in NRS 11.220 barred BNYM's affirmative quiet title/declaratory relief claim. The cancellation issue SFR raises in this case—and the implicated issue of whether BNYM retains an interest in the subject property based on tender or futility of tender that it can assert defensively against SFR's cancellation claim—were not "actually

Supreme Court
OF
Nevada

(O) 1947A

6

and necessarily" litigated in the prior action. *See Five Star Capital Corp.*, 124 Nev. at 1055, 194 P.3d at 709 (listing the elements of issue preclusion and holding that an issue must be "actually and necessarily litigated" to have preclusive effect); *Powell v. Lane*, 289 S.W.3d 440, 445 (Ark. 2008) ("In the context of collateral estoppel, 'actually litigated' means that the issue was raised in the pleadings, or otherwise, that the defendant had a full and fair opportunity to be heard, and that a decision was rendered on the issue."); *see also Dredge Corp. v. Wells Cargo, Inc.*, 80 Nev. 99, 102, 389 P.2d 394, 396 (1964) ("Limitations do not run against defenses."). Because these issues were not actually or necessarily litigated in the federal action, issue preclusion does bar BNYM's defense to SFR's cancellation action.

*SFR did not present undisputed evidence of an earlier maturity date than December 1, 2046*

The merits of the parties' arguments depend on the proper application of NRS 106.240, which "creates a conclusive presumption that a lien on real property is extinguished ten years after the debt becomes [wholly] due." *Pro-Max Corp. v. Feenstra*, 117 Nev. 90, 94, 16 P.3d 1074, 1077 (2001). NRS 106.240 states:

> The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property, *appearing of record*, and not otherwise *satisfied and discharged of record*, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust *according to the terms thereof or any recorded written extension thereof* become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.

(Emphases added.) Thus, to determine whether the 10-year period in NRS 106.240 has run, the statute directs its reader to examine whether the "debt secured by the mortgage or deed of trust according to the terms thereof or

any recorded written extension thereof [became] wholly due." The statute further requires that the mortgage or deed of trust "appear[] of record."

On its face, the deed of trust states that the obligation it secures matures on December 1, 2046. BNYM argues that the only way to render an obligation secured by a deed of trust "wholly due" under the statute is to await expiration of the original maturity date indicated in the recorded deed of trust. SFR counters that a debt secured by a deed of trust can become "wholly due" if it was accelerated. SFR maintains that such acceleration occurred in 2008, before SFR recorded the first notice, such that the deed of trust terminated in 2018, before BNYM filed the third notice. SFR states in its answering brief that "[t]o be clear, SFR did not and does not argue that [the first notice], in and of itself, accelerated the loan," and instead argues that a prior acceleration occurred. As support, SFR points to the statement by the trustee in the first notice that the beneficiary "has declared and does hereby declare all sums secured thereby immediately due and payable."

The record on appeal does not support summary judgment in SFR's favor on the theory that the obligation the deed of trust secures was accelerated in 2008 such that the deed of trust expired in 2018 under NRS 106.240. Acceleration of a debt must "be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention." *Clayton v. Gardner*, 107 Nev. 468, 470, 813 P.2d 997, 999 (1991) (quoting *United States v. Feterl*, 849 F.2d 354, 357 (8th Cir. 1988)). The past-tense language in the first notice referencing a prior, unrecorded acceleration is unclear and, if read as having already accelerated the note, conflicts with other language in that notice. By its terms, the first notice references a default in "the *installment* of principal, interest and impounds *which became due on*

SUPREME COURT
OF
NEVADA

(O) 1947A

8

*01/08/2008* and all subsequent installments." It then reiterates the December 1, 2046, maturity date, stating that "*in addition, the entire principal amount will become due on 12/01/2046* as a result of the maturity of the obligation on that date." Finally, the first notice advises the Pritzes' of their 35-day right to cure the monthly installment default under NRS 107.080 "without requiring payment of that portion of the principal and interest which would not be due had no default occurred." The first notice thus does not establish that acceleration was a fait accompli before it was filed but, rather, that acceleration would occur if the monthly installment defaults went uncured.

The first notice thus does not clearly and unequivocally establish that the obligation securing the deed of trust became "wholly due" in 2008, thereby advancing the deed of trust's stated December 1, 2046, maturity date. And even assuming as the court did in *SFR Invs. Pool 1, LLC v. U.S. Bank N.A.*, 138 Nev., Adv. Op. 22, 507 P.3d 194, 197-98 (2022), that the first notice amounted to a notice of intent to accelerate 35 days hence if the debtor failed to make the past-due installments, the record neither establishes that the past-due installments remained unpaid, nor that the acceleration was not ultimately averted or rescinded. True, the first notice was followed by a notice of sale, setting an August 20, 2008, foreclosure date. But the August 20, 2008, foreclosure sale did not occur; instead, the record reflects that BNYM's predecessor prepared and the Pritzes signed a loan modification agreement that averted the foreclosure sale. Although apparently not filed with the County Recorder, this

agreement reiterates the debt's maturity date as December 1, 2046.[3] And the second and third notices both suggest that the Pritzes cured the January 1, 2008, default referenced in the first notice, because they recite a May 1, 2009, monthly obligation default date.

Courts elsewhere have divided on the interpretation and effect of ancient mortgage statutes such as NRS 106.240. *See* Nancy Saint-Paul, *Clearing Land Titles* §§ 6:6-6:50 (3d ed. Supp. 2021) (collecting statutes and cases). *Compare Holta v. Certified Fin. Servs. Inc.*, 49 P.3d 1104, 1107 (Alaska 2002) (holding that Alaska's analogous statute does not contemplate acceleration); *Schmidli v. Pearce*, 100 Cal. Rptr. 3d 343, 346 (Ct. App. 2009) (holding that "the record" in California's analogous statute means "a recorded document reflecting the actual debt obligation, such as a deed of trust or promissory note, and not a notice of default"), *with Conner v. Coggins*, 349 So. 2d 780, 781 (Fla. Dist. Ct. App. 1977) (noting that Florida's analogous statue contemplates acceleration); *Driessen-Rieke v. Steckman*, 409 N.W.2d 50, 52 (Minn. Ct. App. 1987) (holding that acceleration triggered the ancient-mortgage period because the mortgage clearly indicated the debt's new maturity date). But what unites them is the requirement that the record clearly establish the underlying obligation's

---

[3]SFR argues that the loan modification agreement is of no import because Countrywide did not sign it. But this argument is beside the point, because BNYM does not seek to enforce the agreement. *Cf.* NRS 111.220. Rather, BNYM points to the agreement to demonstrate that Countrywide offered the Pritzes an opportunity to cure default by paying less than the note's full sum—which the Pritzes accepted by their apparent performance—and accepted payments for less than the full obligation, thus rescinding any prior acceleration. *See Leonard v. Ocwen Loan Serv., LLC*, 616 Fed. Appx. 677, 678, 680 (5th Cir. 2015) (holding that a lender abandoned a prior acceleration by giving the debtors an opportunity to cure default by paying less than the obligation's full sum).

 

maturity date and that the statute run from that date. *See, e.g., Holta v. Certified Fin. Servs. Inc.*, 49 P.3d 1104, 1107 (Alaska 2002) (holding that Alaska's analogous statute attains its purpose of clearing liens on title by "establishing a ten-year default maturity date; the statute allows no exception to the default date unless a different date is expressly stated in either the recorded lien itself or some other recorded document that extends the lien"); *Trenk v. Soheili*, 273 Cal. Rptr. 3d 184, 191 (Ct. App. 2020) ("There is no ambiguity in this statutory requirement that a document stating the last date for payment of the underlying obligation must be *recorded* for the 10-year period to apply."); *Miller v. Provost*, 33 Cal. Rptr. 2d 288, 291 (Ct. App. 1994) (holding that the note's maturity date must be clear from the recorded documents to trigger California's analogous statute); *Silvernagel v. U.S. Bank, N.A.*, 503 P.3d 165, 170-71 (Colo. Ct. App. 2021) (holding that acceleration does not impact the running of Colorado's analogous 15-year statute unless the maturity date is changed in the recorded deed of trust); *Willow Tree Invs., Inc. v. Wilhelm*, 465 N.W.2d 849, 852 (Iowa 1991) (holding that the debt's maturity date must appear from documents recorded with the county recorder to trigger Iowa's ancient mortgage statute). Here, the only clear maturity date stated in the record is December 1, 2046. The ambiguous and conflicting evidence in this case falls short of establishing an earlier maturity date for purposes of NRS 106.240. We therefore conclude that SFR failed to meet its burden on summary judgment. We do not hold that BNYM's property interest persists or that summary judgment in BNYM's favor would have been proper, just that summary judgment for SFR on its cancellation claim was not. We accordingly,

SUPREME COURT
OF
NEVADA

(O) 1947A

11

ORDER the judgment of the district court VACATED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

cc:    Hon. David M. Jones, District Judge
M. Nelson Segel, Settlement Judge
ZBS Law, LLP
Hanks Law Group
Eighth District Court Clerk